**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

**NORTH ATLANTIC DISTRIBUTION, INC. AND MICHAEL MIRANDA,**
**Plaintiffs,**

**V.** **C.A. NO: 05-348L**

**TEAMSTERS LOCAL UNION NO. 430,**
**TEAMSTERS LOCAL UNION NO. 776,**
**DANIEL A. VIRTUE *in his capacity as President of Teamsters Local Union No. 776***
**AND JOHN L. FOGLE *in his capacity as Secretary of Teamsters Local Union No. 776,***
**Defendants.**

**PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' JURY DEMAND**

NOW COME Plaintiffs and hereby move to strike Defendants' demand for "a trial by jury on all issues so triable." In support of said motion, Plaintiffs rely on their supporting memorandum of law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order striking Defendants' demand for jury trial.

Plaintiffs,
North Atlantic Distribution, Inc.
And Michael Miranda,
By their Attorneys,

Max Wistow (#0330)

Jeffrey A. Mega (#6441)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)

Thomas J. McAndrew, Esq. (#1001)
One Turks Head Place, Ste. 205
Providence, RI 02903
(401) 455-0350
(401) 455-0882 (fax)

**CERTIFICATION**

I hereby certify that ~~I mailed~~ hand delivered a true copy of the within, postage-prepaid, on the 20 day of October, 2005, to the following:

Christopher H. Little, Esq.
Little Medeiros Kinder Bulman & Whitney, PC
72 Pine Street
Providence, RI 02903

F:\Miranda, Mike (NORAD) #6523\PLEADINGS\US DISTRICT CT\Motion to Strike Defendants' Jury Demand.doc

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH ATLANTIC DISTRIBUTION, INC.**<br>**AND MICHAEL MIRANDA,**<br>**Plaintiffs,**<br><br>**V.**<br><br>**TEAMSTERS LOCAL UNION NO. 430,**<br>**TEAMSTERS LOCAL UNION NO. 776,**<br>**DANIEL A. VIRTUE *in his capacity as President of Teamsters Local Union No. 776***<br>**AND JOHN L. FOGLE *in his capacity as Secretary of Teamsters Local Union No. 776,***<br>**Defendants.** | : | **C.A. NO: 05-348L** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' JURY DEMAND**

Plaintiffs Michael Miranda ("Miranda") and North Atlantic Distribution, Inc. ("NORAD") have filed the instant motion to strike Defendants' jury demand because all of the issues relevant to the instant controversy, and the remedies sought with relation thereto, are equitable in nature.

The pleadings reveal that this matter has its origins in a dispute arising between Teamsters Local Union No. 430 ("Local 430")[1], some members of Local 430, and North Atlantic Transport Company of Rhode Island ("NATCO"), a Rhode Island Corporation of which Miranda is the sole shareholder. Local 430 presently seeks to hold Miranda and NORAD, a Rhode Island Corporation of

[1] Local 430 has merged into or otherwise become part of Teamsters Local Union No. 776 ("Local 776"), which, along with its Principal Officer/President/Business Agent, Daniel A. Virtue ("Virtue") and Secretary/Treasurer/Business Agent, John L. Fogle, II ("Fogel") have all been joined as defendants to the instant suit.

which Miranda is also a sole shareholder, liable for a foreign judgment entered in its (Local 430's) favor against NATCO in connection with said dispute. The specific facts relative thereto, and as alleged in Plaintiffs' Complaint are as follows:

> "11. At all times relevant hereto, NATCO and Local 430 were parties to a Collective Bargaining Agreement ("CBA") covering truck drivers who operated out of NATCO's York, Pennsylvania terminal.
>
> 12. On or about October 26, 2001, NATCO largely ceased operations at its York, Pennsylvania terminal due to lack of business.
>
> 13. Thereafter, Local 430 and several of its members filed grievances against NATCO.
>
> 14. The grievances were submitted to an arbitration panel. The arbitration took place on or about May 22, 2002 at which time NATCO was defaulted for its failure to appear and Local 430 and its members' grievances were upheld without any reference to any specific dollar amount of damages . . . .
>
> 15. On August 21, 2002, Local 430 filed an action against NATCO in the United States District Court for the Middle District of Pennsylvania (CV 02-1461) to enforce the arbitration award. The action sought, among other things, an order directing NATCO to pay the grievants' unused/earned vacation pay, sick time, personal days, down time, etc . . . .
>
> 16. On February 24, 2003 Local 430 filed a request for default judgment in CV 02-1461. The request for default judgment sought $27,513.28 related to two grievances . . . , $441,446.40 for so-called "liquidated damages" related to the two grievances, $46,606.96 related to pension and health benefits, attorneys' fees, costs, plus "liquidated damages" in the amount of $1,529.28 per day for each day subsequent to February 14, 2003 until "the claim is paid pursuant to Article 15 of the National Automobile Transporters Agreement."
>
> 17. On February 28, 2003 a judgment was entered in CV 02-1461 in favor of Local 430 and against NATCO . . .
>
> ***

> 19. On or about January 7, 2005, the judgment entered in CV 02-1461 was registered in the United States District Court for the District of Rhode Island (Misc. 05-006L) . . .
>
> 20. On June 9, 2005, Local 430 advised NORAD that it [would] seek to hold NORAD responsible for the satisfaction of the judgment entered in CV 02-1461 and that it [might] also seek to hold Miranda responsible to satisfy the judgment. In addition, Local 430 indicated that the grievances which originally amounted to $27,513.28 had grown to $1,810,586.30 exclusive of interest as a result of the $1,529.28 per day "liquidated damages" assessment which Local 430 claims continues to accrue.

Plaintiffs Miranda and NORAD brought this action seeking a Declaratory Judgment that they were not liable to Defendants on the judgment entered against NATCO.

In addition to answering Plaintiffs' Complaint, Defendants counterclaim against Plaintiffs based on the equitable theories of alter ego "as that doctrine has developed under corporate law" <u>Defendants' Counterclaim</u> (<u>Count III</u>) at ¶25; alter ego "as it has developed in the federal labor law context . . . ," <u>Id</u>. (<u>Count II</u>) at ¶17; and, "the single employer doctrine as it has developed in the federal labor law context . . . ." <u>Id</u>. (<u>Count I</u>) at ¶12. Plaintiffs discuss each such counterclaim count in reverse order inasmuch as the alter ego doctrine as it has developed in the federal labor law context and the single employer doctrine in that same context are simply more specialized applications of the alter ego theory as it has developed under general corporate law.

I. <u>ALL CLAIMS ARE EQUITABLE IN NATURE</u>

(A) "<u>COUNT III - CORPORATE ALTER EGO CLAIM AGAINST MIRANDA</u>"

Count III of Defendants' Counterclaim alleges that

> "25. [i]n addition to his status as an employer and an alter ego as those doctrines have developed under the federal labor law, Miranda is also an alter ego of NATCO as that doctrine has developed under corporate law." (Emphasis added).

The alter ego doctrine, also known as "piercing the corporate veil," as it has developed under corporate law, is characterized as "equitable in nature." 18 Am. Jur. 2d. Corporations § 47 (2005). (Emphasis added).

The cases which speak of the alter ego doctrine as an equitable remedy are legion. See Heflin v. Koszela, 774 A.2d 25, 30 (R.I. 2001) (holding, in pertinent part, that "[t]o invoke the equitable alter ego doctrine . . . the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.") (Internal citations omitted.) (Emphasis added.); Wheeling-Pittsburg Steel Corp. v. Intersteel, Inc., 758 F.Supp.1054, 1057 (W.D. Pa. 1990) ("Pennsylvania will permit recovery on an alter ego theory by a showing of injustice.") (Emphasis added); see also Ballie Lumber Co. v. Thompson, 612 S.E.2d 296, 299 (G.A. 2005) ("In general, equitable principles govern the alter ego doctrine . . . . 'As a consequence, [a claim for piercing the corporate veil] is appropriately granted only in the absence of adequate remedies at law."'). (Internal citations omitted) (Emphasis added); In re Porras, 312 B.R. 81, 122 (Bankr. W.D. Tex. 2004) (holding that under Texas law, the alter ego doctrine is one "based upon equitable concerns"). (Emphasis added); In re American Telecom Corp., 304 B.R. 867, 871 (Bankr. N.D. Ill. 2004) ("[alter-ego suits] under various state laws, including Illinois law, are actually equitable remedies . . . ."). (Emphasis added); International Financial Services Corp. v. Chromas, 356 F.3d 731, 737 (7th Cir. 2004) (holding that "piercing the

corporate veil on an alter ego theory is available only where failing to provide such relief would promote injustice or inequity. It follows that veil-piercing must be an exercise of equitable power."). (Emphasis added); Strawbridge v. Sugar Mountain Resort, 243 F.Supp.2d 472, 476 (W.D.N.C. 2003) (under North Carolina law, "[p]iercing the corporate veil is an equitable claim that requires 'a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege' to [sic] show that the corporation is a mere instrumentality of the individual or shareholders."'). (Internal citations omitted). (Emphasis added).

(B) "COUNT II – LMRA ALTER EGO CLAIM AGAINST NORAD AND MIRANDA"

In Count II, Defendants themselves claim, in relevant portion, that

> "17. The alter ego doctrine as it has developed in the federal labor law context involves a more lenient standard for disregarding the corporate form than that employed in corporate law. As the doctrine has developed under the federal labor law, Miranda, NATCO, and NORAD are all alter egos of one another for purposes of the CBA and arbitration award here at issue. As alter egos, Miranda and NORAD are liable for the judgment against NATCO." (Emphasis added).

Thus, in Count II, Defendants themselves acknowledge they seek the same remedy ("disregarding the corporate form") under federal labor law as would be employed in corporate law. The difference is they ask to be allowed this same remedy under a purportedly "more lenient standard."

The alter ego doctrine, in the federal labor law context, has been described as

"a 'tool of equity.'

***

> "As an equitable remedy . . . piercing the corporate veil is not technically a mechanism for imposing 'legal' liability, but for remedying the fundamental unfairness [that] will result from a failure to disregard the corporate form." Trustees of the National Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk, 332 F.3d 188, 193, n.6 (3rd Cir. 2003). (Emphasis added).

Similarly, the First Circuit has addressed labor law veil piercing, observing that while there is no "litmus test in the federal courts governing when to disregard corporate form . . . the rule in federal cases is founded only on the broad principle that 'a corporate entity may be disregarded in the interests of public convenience, fairness and equity.'" Brotherhood of Locomotive Engineers v. Springfield, 210 F.3d 18, 26 (1st Cir. 2000). (Emphasis added).

(C) "COUNT I – LMRA SINGLE EMPLOYER CLAIM AGAINST NORAD AND MIRANDA"

Count I of Defendants' Counterclaim avers, in pertinent part, that

> "11. [t]his claim is brought against NORAD and Miranda pursuant to the Labor Management Relations Act to enforce the judgment of the Middle District of Pennsylvania and the underlying arbitration award.
>
> 12. The single employer doctrine as it has developed in the federal labor law context provides that nominally separate entities may constitute a single employer for purposes of collective bargaining agreements." (Emphasis added).

The single employer doctrine, also referred to as the "integrated enterprise test," was originally developed as a "labor specific veil piercing test," Pearson v. Component Technology Corp., 247 F.3d 471, 485 (3rd Cir. 2001), by the National Labor Relations Board in an effort to address situations

overlooked by corporate oriented veil-piercing tests. Accordingly, it has been observed that "the policy underlying the single employer doctrine is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arms length relationship." Murray v. Miner, 74 F.3d 402, 405 (2nd Cir. 1996). (Emphasis added); see also Daniels v. Kerr McGee Corp., 841 F. Supp. 1133, 1135 (D. Wyoming 1993) (holding that, at its core, the integrated enterprise test seeks "to determine whether, under the facts of a particular case, the parent corporation has exercised such a significant degree of control over the acts of the subsidiary that equitable principles require a court to intervene and disregard the corporate form in order to avoid an unjust result."). (Emphasis added).

II. CLAIMS FOR RELIEF SOUNDING IN EQUITY ARE NOT AMENABLE TO TRIAL-BY-JURY

Since all of the issues raised in Plaintiffs' Complaint and in Defendants' Counterclaim sound in equity[2], Defendants may not seek to have the same resolved by a jury as such matters are for the sole determination of the trial justice.

Even when a federal district court is applying the substantive law of a state, "federal procedural law controls the question of whether there is a right to a jury trial." International Financial Services Corp., 356 F.3d at 735 (7th Cir. 2004). It is elemental that "[t]he Federal Constitution's Seventh Amendment does not preserve the right to trial by jury in equity actions and there is

[2] It appears that Defendants have asked for a jury trial only as to their Counterclaim. In any event, the resolution of the issues raised by Plaintiffs' Complaint (for which no jury trial was requested by them) depend on the application, vel non, of the same equitable doctrines.

accordingly no right to trial of equity actions in federal court . . . unless specific statutes . . . so provide." 27A Am. Jur. 2d. Equity § 234 (2005); see also 1 Dan B. Dobbs Dobbs Law of Remedies: Damages – Equity – Restitution § 1.2 at 11 (2d. ed. 1993) ("[j]ury trial is not granted in equity cases . . . ."); and see International Financial Services Corp. supra 735 ("generally speaking, questions sounding in equity are for a judge to decide"). (Internal citation omitted).

Neither the Labor-Management Relations Act (29 U.S.C. § 185), nor any other relevant federal statute allow a trial-by-jury for equitable claims. Indeed, the United States District Court for the Southern District of Ohio, Western Division in United Electrical, Radio and Machine Workers of America v. Amcast Industrial Corp. 634 F.Supp. 1135, 1144 (S.D. Ohio 1986), considered this very issue with respect to a plaintiff's claim for injunctive relief pursuant to 29 U.S.C. § 185. The District Court unequivocally held, "it is undisputed that there is no entitlement to a jury when purely [equitable] relief is sought."

Accordingly, the issues raised by Plaintiffs' Complaint and Defendants' counterclaims, all of which seek equitable relief, are not amenable to a trial-by-jury and can only be resolved by the trial justice assigned to this case.

**CONCLUSION**

For all of the reasons discussed herein, the Court should grant Plaintiffs' Motion to Strike Defendants' demand for a jury trial.

Plaintiffs,
North Atlantic Distribution, Inc.
And Michael Miranda,
By their Attorneys,

Max Wistow (#0330)

Jeffrey A. Mega (#6441)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)

Thomas J. McAndrew, Esq. (#1001)
One Turks Head Place, Ste. 205
Providence, RI 02903
(401) 455-0350 (Telephone)
(401) 455-0882 (Facsimile)

**CERTIFICATION**

I hereby certify that I hand-delivered a true copy of the within, postage-prepaid, on the 20 day of October, 2005, to the following:

Christopher H. Little, Esq.
*Little Medeiros Kinder Bulman & Whitney, PC*
72 Pine Street
Providence, RI 02903

F:\Miranda, Mike (NORAD) #6523\PLEADINGS\US DISTRICT CT\Memo of Law in Support of Motion to Strike Counterclaim Jury Demand.doc