**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

NORTH ATLANTIC DISTRIBUTION, INC.; and MICHAEL MIRANDA,

Plaintiffs,

v.

TEAMSTERS LOCAL UNION NO. 430; TEAMSTERS LOCAL UNION NO. 776; DANIEL A. VIRTUE, in his Capacity as President of Teamsters Local Union No. 776; and JOHN L. FOGLE, in his Capacity as Secretary of Teamsters Local Union No. 776,

Defendants.

C.A. No. 05-348 L

**DEFENDANTS' OBJECTION TO**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants and Counterclaim Plaintiffs Teamsters Local Union No. 430, Teamsters Local Union No. 776, Daniel A. Virtue, and John L. Fogle (collectively "Teamsters 430") hereby object to the Motion for Summary Judgment filed by Plaintiffs and Counterclaim Defendants

North Atlantic Distribution, Inc. and Michael Miranda. In support of this objection, Teamsters 430 relies on the memorandum of law filed herewith.

Christopher H. Little (#1789)
Scott K. Pomeroy (#6044)
Little Medeiros Kinder Bulman & Whitney, P.C.
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 521-3555

**Counsel for Defendants Teamsters Local Union No. 430; Teamsters Local Union No. 776; Daniel A. Virtue, in his capacity as President of Teamsters Local Union No. 776; and John L. Fogle, in his capacity as Secretary of Teamsters Local Union No. 776.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March , 2006, I caused to be served by first class mail, postage prepaid a copy of the within Objection to Plaintiffs' Motion for Summary Judgment to each of the following:

Max Wistow, Esq.
Jeffrey A. Mega, Esq.
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903

Thomas J. McAndrew, Esq.
One Turks Head Place, Suite 205
Providence, RI 02903

Wendy R. Novak

scott/A114/1328

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC.; and MICHAEL MIRANDA, | ) | |
| Plaintiffs, | ) | C.A. No. 05-348 L |
| v. | ) | |
| TEAMSTERS LOCAL UNION NO. 430; TEAMSTERS LOCAL UNION NO. 776; DANIEL A. VIRTUE, in his Capacity as President of Teamsters Local Union No. 776; and JOHN L. FOGLE, in his Capacity as Secretary of Teamsters Local Union No. 776, | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants and Counterclaim Plaintiffs Teamsters Local Union No. 430, Teamsters Local Union No. 776, Daniel A. Virtue, and John L. Fogle (collectively "Teamsters 430") oppose the motion for summary judgment filed by Plaintiffs and Counterclaim Defendants North Atlantic Distribution, Inc. ("NORAD") and Michael Miranda ("Miranda").

**Introduction and Factual Background**

In 2001, North Atlantic Transport Co. of Rhode Island ("NATCO") violated the terms of a collective bargaining agreement governed by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, by closing its York, Pennsylvania operations without giving notice to its union employees and without paying those employees for wages earned or unused vacation and personal time. *See* 1st Am. Reply to Countercls. at ¶ 6. In accordance with the procedures outlined in the agreement, Teamsters 430 commenced arbitration proceedings against NATCO,

but NATCO refused to appear or defend itself. *Id.* at ¶ 7. Plaintiffs do not contend that NATCO failed to receive adequate notice of the arbitration proceedings or a fair opportunity to defend.

After obtaining an arbitration award in its favor, Teamsters 430 brought an action in the United States District Court for the Middle District of Pennsylvania to confirm the arbitration award in accordance with § 301 of the NLRA, 29 U.S.C. § 185. Once again, NATCO refused to appear or defend despite the undisputed fact that it was duly served and thus had an opportunity to raise any meritorious defense or objection that it might have had. On February 28, 2003, the district court in Pennsylvania entered judgment against NATCO (the "Pennsylvania judgment"). *See* Exhibit A. The Pennsylvania judgment, which has since been registered in this Court pursuant to 28 U.S.C. § 1963, provides, in relevant part,

> Defendant [NATCO] having defaulted for failure to appear, plead or otherwise defend, Judgment is entered in favor of Plaintiff [Teamsters 430] and against Defendant [NATCO] in the amount of $516,815.59 as of February 14, 2003 plus the amount of $1,529.28 per day ($19.16 per hour for each of the ten employees that accrue at the rate of eight (8) hours per day) for liquidated damages until the claim is paid pursuant to Article 15 of the Master Automobile Transporters Agreement.

Exhibit A.

Believing themselves to be the target of Teamsters 430's efforts to collect on the Pennsylvania judgment, NORAD and Miranda preemptively filed the present action to avoid their liability for NATCO's unpaid obligations. In the pleadings, Plaintiffs acknowledge that Miranda was at all relevant times the sole shareholder and president of both NATCO and NORAD. *See, e.g.*, 1st Am. Reply to Countercls. at ¶ 19. Plaintiffs also admit that NATCO and NORAD shared the same address and guaranteed each other's obligations. *Id.* at ¶¶ 21–22. Nevertheless, Plaintiffs allege, *inter alia*, that they are not NATCO's alter egos and that the judgment against NATCO imposes an unfair penalty. *See* Compl. at ¶¶ 20–29.

Teamsters 430 counterclaims that NORAD and Miranda are liable to the same extent as judgment-debtor NATCO because legally all three should be regarded as one and the same entity. Teamsters 430's first count is based on the NLRA's single employer doctrine, which allows nominally separate entities and individuals to be treated as a single "employer" in a variety of labor-law contexts.[1] To determine whether two or more individuals or entities constitute a single employer under the doctrine, courts typically examine such factors as: interrelation of operations, commonality of management, centralization of control over labor relations, and commonality of ownership. Penntech Papers, Inc. v. National Labor Relations Bd., 706 F.2d 18, 25 (1st Cir. 1983), *cert. denied*, 464 U.S. 892 (1983); *see also* Radio & Television Broadcast Union v. Broadcast Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965). "Single employer status ultimately depends on 'all the circumstances of the case' and is marked by an absence of an 'arm's length relationship found among unintegrated companies.'" Penntech, 706 F.2d at 25 (quoting Local 627, Int'l Union of Operating Eng'rs v. National Labor Relations Bd., 518 F.2d 1040, 1045–46 (D.C. Cir. 1975), *aff'd on this issue sub nom.*, South Prairie Constr. Co. v. Local 627, Int'l Union of Operating Eng'rs, 425 U.S. 800 (1976)). "Stated otherwise, the fundamental inquiry is whether there exists overall control of critical matters at the policy level." *Id.*

Teamsters 430's second count is based on labor law's alter ego doctrine, which is conceptually distinct from the more frequently used corporate doctrine that shares the same name. In labor law, the alter ego doctrine "focuses on 'the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets.'" International Union of Operating Eng'rs

---

[1] Under the NLRA's expansive definition, an "employer" includes "any person acting as an agent of an employer, directly or indirectly . . . ." 29 U.S.C. § 152(2).

v. Centor Contractors, Inc., 831 F.2d 1309, 1312–13 (7th Cir. 1987)(quoting Penntech, 706 F.2d at 24); *see also* Southport Petroleum Co. v. National Labor Relations Bd., 315 U.S. 100, 106 (1942). Like the single employer doctrine, a finding of alter ego status is heavily fact-based and turns on a number of factors including the two companies' respective ownership, management, business purpose, operations, customers, and equipment. *See*, *e.g.*, Crest Tankers, Inc. v. National Maritime Union of Am., 796 F.2d 234, 237 (8th Cir. 1986). Where one company is found to be the alter ego of another under this doctrine, as the Supreme Court has explained, "the courts have had little difficulty holding that the successor is in reality the same employer and is subject to all the legal and contractual obligations of the predecessor." Howard Johnson Co. v. Detroit Local Joint Executive Bd., 417 U.S. 249, 259 n.5 (1974).

The third count in Teamsters 430's counterclaim alleges, based on ordinary corporate law alter ego theories, that NORAD and Miranda are derivatively liable for NATCO's failure to satisfy the Pennsylvania judgment. Potentially applicable corporate alter ego, mere continuation, and veil piercing doctrines are well established under Rhode Island law. *See*, *e.g.*, Heflin v. Koszela, 774 A.2d 25, 30 (R.I. 2001)("The alter ego doctrine permits creditors of a corporation to reach the assets of the individual or individuals that control the corporation.").

Under any of the above theories, if proven, NORAD and Miranda can be held derivatively liable for the unpaid judgment that entered against NATCO. *Compare*, *e.g.*, Great Race Pizza Shoppes, Inc., 277 N.L.R.B. 1175 (1985)(single employer); Southeastern Envelope Co., 246 N.L.R.B. 423 (1979)(alter ego); National Hotel Assocs. v. O. Ahlborg & Sons, Inc., 827 A.2d 646 (R.I. 2003)(corporate veil piercing). It is just such derivative liability that Teamsters 430 seeks to impose on the Plaintiffs in this action.

NORAD and Miranda, however, do not seek summary judgment on the merits by challenging their alleged single-employer or alter ego status. Rather, for purposes of their motion, Plaintiffs *concede* that:

- Miranda, NORAD, and NATCO (collectively the "Miranda Entities") constitute a single employer under the NLRA;
- Plaintiffs are alter egos of NATCO under labor law; and
- under applicable corporate law principles, the Court may pierce the corporate forms of both NATCO and NORAD.

*See* Pls.' Memo. in Supp. of Mot. for Summ. J. at 6 n.6.

Having conceded single employer and alter ego status, Plaintiffs' due process argument must fail. In their memorandum, Plaintiffs contend that because they were not named parties to the Pennsylvania action, they never had notice or an opportunity to defend against the claims that resulted in the underlying default judgment against NATCO. However, if Plaintiffs and NATCO truly qualify as a single employer under the NLRA or as alter egos of one another, then they do not legally have separate identities. Notice to one was notice to all, and thus there was no due process violation.

Plaintiffs second argument is that the Court should decline to enforce the judgment entered against NATCO because it constitutes an inequitable and unconscionable penalty. This argument is simply an attack on the underlying default judgment which is addressed to the wrong forum. If Plaintiffs seek to alter or amend the substance of the Pennsylvania judgment, their proper recourse under Rule 60(b) is to file the appropriate motion in the United States District Court for the Middle District of Pennsylvania.

**Standard of Review**

Under Rule 56, summary judgment may only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986). In reviewing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and *all justifiable inferences* are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (emphasis added).

Given Plaintiffs' concession with respect to the core factual questions of single employer and alter ego status, the Rule 12(b)(6) standard for judgment as a matter of law is probably also applicable here. When a counterclaim is challenged under Rule 12(b)(6), the court "must accept as true the well-pleaded factual allegations of the complainant, draw all reasonable inferences therefrom in the [counterclaim] plaintiff's favor, and determine whether the [counterclaim], so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). Motions to dismiss under Rule 12(b)(6) are disfavored and should be denied "unless it appears beyond doubt that the [counterclaim] plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). "For purposes of Fed. R. Civ. P. 12(b)(6), the possibility of a claim is enough to defeat dismissal." Carparts Distrib. Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc., 37 F.3d 12, 17 (1st Cir. 1994).

## Points and Authorities

**1. Without a final determination of Plaintiffs' single employer and alter ego status, it is premature for the Court to even consider Plaintiffs' fairness and due process arguments.**

As an initial matter, there is no reason why, at this preliminary stage of the litigation, the Court needs to consider the alleged unfairness of the Pennsylvania judgment or Plaintiffs' due process arguments. In essence, the Plaintiffs are asking the Court to undertake an out-of-sequence, piecemeal review of tangential legal issues that may not even come into play depending upon how the Court ultimately resolves the core factual disputes in the case. Instead of hearing the Plaintiffs' motion at this time, the Court should simply defer consideration of the issues (or deny the motion without prejudice) until such time as discovery has been completed and the merits of the case can be addressed in light of the facts revealed in discovery. As reflected in this Court's pretrial order, discovery requirements here are not extensive and may be completed relatively soon. *See* Landis v. North American Co., 299 U.S. 248, 254 (1936)(observing that every court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *see also* Fed. R. Civ. P. 56(f).

Indeed, the Court should not attempt to resolve speculative and hypothetical disputes that, depending on the outcome of future factual determinations, it may never have to reach. *See*, *e.g.*, Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 206 (1st Cir. 2002), *cert. denied*, 537 U.S. 827 (2002)("[C]ourts should not render decisions absent a genuine need to resolve a real dispute.")(quoting 13A Charles A. Wright, *et al.*, Federal Practice & Procedure § 3532.1 at 114). Here, Plaintiffs' request that the Court consider the Miranda Entities to be a single employer for purposes of summary judgment demonstrates Plaintiffs' own recognition that, absent such a

finding, their motion presents no real dispute for the Court to resolve. Moreover, should the Court eventually need to resolve the issues raised in Plaintiffs' motion, it would obviously benefit from having a full evidentiary record concerning the nature of the relationship between Plaintiffs and NATCO. Much of the evidence that bears on the substantive question of single employer or alter ego status may well be of consequence to the due process and fairness questions as well.

Thus, for reasons of judicial efficiency and to avoid ruling on hypothetical questions in the abstract, it is premature for the Court to even consider Plaintiffs' motion.

**2. If the Miranda Entities are truly a single employer or alter egos of one another, then due process was satisfied because notice to one was notice to all.**

It is difficult to even re-state Plaintiffs' due process argument coherently because their argument implicitly requires one to *simultaneously* assume that the Miranda Entities are one and the same (so Plaintiffs stand to be harmed by any enforcement of the NATCO judgment) *and* that the Miranda Entities are legally separate from one another (so Plaintiffs can say due process was not satisfied by service on NATCO). Particularly in the labor law context, other courts have rejected arguments built on similar nonsense, and so should this one.

**a. Under the NLRA's single employer and alter ego doctrines, notice to one is notice to all.**

It is well established that the NLRA "is remedial in character and is to be broadly and liberally construed to accomplish its purpose." *See*, *e.g.*, National Labor Relations Board v. Knoxville Publishing Co., 124 F.2d 875, 881 (6th Cir. 1942). Consistent with the NLRA's remedial purposes, the National Labor Relations Board has long recognized that derivative liability "may be imposed upon a party to a supplemental proceeding, even though he had not been a party to the proceeding in which the unfair labor practices were found, if he was

sufficiently closely related to the party found to have committed the unfair labor practices or had removed its assets in attempted evasion of the . . . liability." Coast Delivery Serv., Inc., 198 N.L.R.B. 1026, 1027 (1972)(citing National Labor Relations Board v. Deena Artware, Inc., 361 U.S. 398 (1960), and other authorities). The relationship between any two parties is "sufficiently closely related" for such an imposition of derivative liability where they constitute a single employer under the NLRA or are alter egos of one another. *Id.*; *see also* Evans Sheet Metal, 337 N.L.R.B. 1200, 1203 (2002); Aiken Underground Utility Servs., 336 N.L.R.B. 1033, 1033 (2001); Great Race Pizza, 277 N.L.R.B. at 1176 & n.4; Hopkins Hardware, 271 N.L.R.B. 175, 175 (1984); F&F Constr. Co., 269 N.L.R.B. 287, 287 & n. 5 (1984); Southeastern Envelope, 246 N.L.R.B. at 423–24; Perma Vinyl Corp., 164 N.L.R.B. 968, 969–70 (1967), *enforced sub nom.*, United States Pipe & Foundry Co. v. National Labor Relations Board, 398 F.2d 544 (5th Cir. 1968).

As the Board explained in Southeastern Envelope,

> [W]e believe that permitting the General Counsel to litigate issues of derivative liability in a compliance proceeding, even when those issues could have been pleaded and litigated in the original unfair labor practice proceeding, will better insure effectuation of the remedial purposes and policies of the Act without denying procedural fairness to any party alleged to be derivatively liable. In the present case, for instance, Diversified has been found liable only after it received fair notice and full opportunity to litigate at the compliance hearing the question of its status as Expandvelope's alter ego. Once found to be Expandvelope's alter ego, Diversified cannot complain that it should have had notice and an opportunity to defend itself against the underlying unfair labor practice charges. Since the interests of alter egos are by definition identical, the alter ego finding in the compliance proceeding conclusively established that Diversified did receive adequate notice, was present at the hearing, and did defend itself through the representation of Expandvelope in the earlier unfair labor practice proceeding.

*Id.*, 246 N.L.R.B. at 424; *see also* Perma Vinyl, 164 N.L.R.B. at 969 ("The objectives of national labor policy, reflected in established principles of federal law, require that the rightful

prerogative of owners independently to rearrange their businesses and even eliminate themselves as employers be balanced by some protection to the employees from a sudden change in the employment relationship."). Thus, so long as a new defendant is given an opportunity to litigate the question of its single employer or alter ego status at some point prior to the imposition of derivative liability, due process has been satisfied. *See* Evans Sheetmetal, 337 N.L.R.B. at 1202–03; Aiken Underground, 336 N.L.R.B. at 1033.

Given the Board's important role in articulating a unified body of federal labor law, it is not surprising that the federal courts have followed the Board's reasoning on this issue and reached the same conclusion. In Viking Indus. Sec., Inc. v. National Labor Relations Board, 225 F.3d 131 (2d Cir. 2000), for example, the Second Circuit held that "[b]ecause the businesses that compose a 'single employer' are deemed to have identical interests, the representation of the interests of one of them at [an] unfair labor practices hearing amounts to representation of both for the purposes of due process." *Id.* at 135. According to the Viking court,

> The exceedingly close relationship of alter ego, successor, or single employer status provides *assurance that the proceeding against the original party was equivalent to a proceeding against the newly added party*. In those circumstances, the newly added party has had notice and an opportunity to contest the charge through its control of the original party.

*Id.* (quoting Associated General Contractors, Inc. v. National Labor Relations Board, 929 F.2d 910, 914–15 (2d Cir. 1991))(emphasis added by the court).

Similarly, in National Labor Relations Board v. International Measurement & Control Co., 978 F.2d 334 (7th Cir. 1992), the court enforced a Board decision that imposed derivative liability on a number of alter egos who had not been joined as parties to the underlying unfair labor practices proceeding. The newly named defendants argued that they could not be held liable for the original defendant's debts because the Board had not given them notice of the

original claims within the six month limitations period prescribed by § 10(b) of the NLRA, 29 U.S.C. § 160(b). After noting that supplemental proceedings against legally indistinguishable parties are "normal under state law and entirely appropriate under labor law," the Seventh Circuit tersely rejected the new defendants' argument:

> If, as the Board found, the two partnerships, three corporations, and four Dybels are but a single employer, then notice to one was notice to all. . . . And if they are not, then everyone other than the defunct Manufacturing prevails without regard to § 10(b). Either way, § 10(b) plays no role in the outcome.

Intern. Measurement, 978 F.2d at 337 (citations omitted); *see also* National Labor Relations Board v. O'Neill, 965 F.2d 1522, 1529 (9th Cir. 1992), *cert. denied*, 509 U.S. 904 (1993)("Where two parties are alter egos, service on one is sufficient to initiate proceedings against both within the statute of limitations.").

Like the derivatively liable parties in Coast Delivery, Southeastern Envelope, and many others, Plaintiffs here have no basis to complain that they received no notice or opportunity to defend if, in fact, they are legally indistinguishable from NATCO. Since Plaintiffs concede for purposes of their motion that the Miranda Entities are a single employer and alter egos, this Court must also assume that Plaintiffs' interests in the prior dispute were identical to NATCO's, that all were subject to common control, and that service on NATCO satisfies due process for NORAD and Miranda as well.

**b. Under the corporate alter ego doctrine, notice to one is notice to all.**

In the realm of corporate law, post-judgment alter ego actions against parties who were not nominally defendants in the underlying action are also commonplace. In these actions too, the type of due process arguments raised by Plaintiffs present no obstacle to the imposition of

derivative liability because a finding of alter ego status means that the two formally separate parties are, in substance, one and the same.

The Rhode Island Supreme Court's decision in National Hotel Assocs. v. O. Ahlborg & Sons, Inc., 827 A.2d 646 (R.I. 2003), is illustrative. There, the plaintiff ("NHA") originally asserted claims against its contractor, Construction Services ("CSI"), in a dispute arising out of a hotel renovation project. A $230,000 arbitration award in favor of NHA was confirmed by the superior court, but the execution against CSI was returned unsatisfied. Undaunted, NHA filed a separate action naming, for the first time, CSI's sole shareholder and an affiliated corporation as defendants on the theory that both were alter egos of the judgment debtor. Holding that the superior court erred in dismissing NHA's alter ego claims, the Supreme Court found that there was ample evidence to impose derivative liability because the individual shareholder was "operating both entities as his personal fiefdoms." *Id.* at 653. As the court explained,

> The criteria for piercing the corporate veil to impose liability on non-corporate defendants vary with the particular circumstances of each case. Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999). However, "when the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity" we will not hesitate to disregard the corporate form and treat the defendant as an individual who is personally liable for the debts of the disregarded corporation. R & B Electric Co. v. Amco Construction Co., 471 A.2d 1351, 1354 (R.I. 1984). Thus, in circumstances in which there is such a unity of interest and ownership between the corporation and its owner or parent corporation such that their separate identities and personalities no longer exist we have held that "[a]dherence to the principle of their separate existence would, under the circumstances, result in injustice." Muirhead v. Fairlawn Enterprise, Inc., 72 R.I. 163, 172–73, 48 A.2d 414, 419 (1946).

*Id.* at 652.

Another pertinent example is Goya Foods, Inc. v. Unanue, 233 F.3d 38 (1st Cir. 2000), *cert. denied*, 532 U.S. 1022 (2001). In that case, Goya obtained a judgment of $6.9 Million, including liquidated damages, against an individual named Charles. Some nine months after

obtaining the judgment in New Jersey, Goya brought suit in Puerto Rico alleging, *inter alia*, that a company called Kalif Trading was actually Charles' alter ego. Kalif Trading had not been a party to the New Jersey suit. After a ten-day bench trial, the Puerto Rico court determined that Kalif Trading was, in fact, Charles' alter ego, and as such, it was responsible for the New Jersey judgment "to the full extent of its assets." *Id.* at 42. Affirming the judgment against Kalif Trading, the First Circuit said,

> Whether or not it was originally created to shield assets from creditors, [Kalif Trading] is not a business separate from Charles, and there is no indication that it has any owners other than Charles. It appears to us, as to the district court, to be nothing other than Charles himself under another name, and therefore under New York law it is permissible to strip away the corporate fig leaf.

*Id.* at 44; *see also* C.F. Trust, Inc. v. First Flight L.P., 306 F.3d 126 (4th Cir. 2002), *certified question answered by*, 580 S.E.2d 806 (Va. 2003), *conformed to*, 338 F.3d 316 (4th Cir. 2003).

As should be clear, Plaintiffs' due process argument pre-supposes a separateness of interest between NATCO, NORAD, and Miranda that simply does not exist if, as Plaintiffs concede for purposes of their motion, the three are truly alter egos of one another.

**c. Plaintiffs' authorities are distinguishable.**

In an effort to persuade the Court to reach the opposite conclusion, Plaintiffs misconstrue a provision of the Restatement (2d) of Judgments and rely on a handful of non-labor law cases, all of which are procedurally and substantively inapposite. *See* Pls.' Memo. at 9–13.

First, Plaintiffs' interpretation of Restatement § 59(5) turns the rule inside-out. Restatement § 59 begins by stating a *general rule* that judgments for or against a corporation ordinarily apply only to the corporation and not to its officers, directors, or shareholders. This general rule is based on the notion that a corporation, for most purposes, is a separate legal person from its individual shareholders. *See id.* at § 59 cmt. a.

Subsection (5) of § 59, upon which Plaintiffs rely, is an *exception* to § 59's general rule. The subsection (5) exception allows judgments against corporations, under some circumstances, to automatically impose liability on the corporation's shareholders even though the individual shareholders may not have been formal parties to the action. Specifically, subsection (5) provides that a finding of alter ego status against a non-party shareholder (if made in the context of a judgment against a corporation) "establishes [the non-party's] personal liability . . . only if he is given notice that such liability is sought to be imposed and fair opportunity to defend the action resulting in the judgment." *Id.* at § 59(5). Read in context, the exception works to expand the res judicata effect of a judgment against a corporation so that any adjudication of alter ego status made in the action *also binds* the non-party alter egos *so long as* the alter egos had notice. Subsection (5) does not impose a requirement that all potential alter egos must participate in the corporation's defense in order for the court to conclusively establish that the corporation itself is liable on the underlying claim for purposes of any subsequent derivative liability suits.

Here, of course, the Pennsylvania judgment contained no finding that the Miranda Entities were a single employer or that Plaintiffs were NATCO's alter egos. Teamsters 430 does not, in the present action, rely on the possible res judicata effect of any such prior findings. Thus, Plaintiffs' reliance on Restatement § 59(5) and Bates Marketing Assocs., Inc. v. Lloyd's Electronics, Inc., 464 A.2d 1142 (N.J. App. Div. 1983), is misplaced.

Teamsters 430 also does not seek to merely amend the Pennsylvania judgment to add NORAD and Miranda as additional defaulting parties after the fact. This is what the judgment-creditors in Motores de Mexicali, S.A. v. Superior Court, 331 P.2d 1 (Cal. 1958); Katzir's Floor & Home Design, Inc. v. M-MLS.COM, 394 F.3d 1143 (9th Cir. 2004); and Butterfield Land Co. v. J.S. Furniture, 2005 WL 546599 (Cal. App. 2005)(unreported decision), all tried to do. Each

of those cases turned on the respective courts' interpretation of a provision of California law—§ 187 of the California Code of Civil Procedure—which authorizes "any suitable process or mode of proceeding . . . which may appear most comfortable to the spirit of this code." Cal. Code Civ. P. § 187. According to the court in Butterfield Land, "Section 187 is often used as authority for amending a judgment to add a new judgment debtor who is an alter ego of the original judgment debtor." *Id.*, 2005 WL 546599 at *4 However, in Motores de Mexicali, the California Supreme Court construed § 187 to disallow this practice in cases where the original defendant had defaulted. The Katzir's Floor and Butterfield Land courts were obligated to follow the California Supreme Court on this narrow point of California procedure.[2] Thus, none of these three cases is even remotely applicable to the case at bar.

**3. NORAD and Miranda must seek relief from the Pennsylvania judgment in the court that rendered it.**

Apart from their due process arguments, Plaintiffs also seek to have this Court amend or vacate a facially-valid judgment from a coordinate district court. However, both Rule 60(b) and prudential concerns require that any dispute as to the fairness of the default judgment be referred back to the Pennsylvania court that rendered it.

The Court cannot examine the alleged unfairness of the Pennsylvania judgment consistent with Rule 60(b) because—outside of two narrow exceptions which are not applicable here—Plaintiffs must raise their objections to the judgment in the court that rendered it. *See* Indian Head Nat'l Bank of Nashua v. Brunelle, 689 F.2d 245, 249–51 (1st Cir. 1982). The first exception allows challenges based on a claim that the rendering court lacked personal

[2] The Ninth Circuit in Katzir's Floor was required to follow California state court procedures because the case involved supplemental proceedings under Fed. R. Civ. P. 69(a) which provides that such proceedings "shall be in accordance with the practice and procedure of the state in which the district court is held, . . . ."

jurisdiction over the original defendant. *Id.* at 250; Covington Indus., Inc. v. Resintex A.G., 629 F.2d 730, 734 (2d Cir. 1980). Plaintiffs make no such argument here.

The second exception allows a court to entertain a collateral attack on a foreign judgment where the grounds for the challenge would be sufficient to support an independent equitable action. Indian Head, 689 F.2d at 249–50. In order to preserve Rule 60's integrity, however, such actions must be reserved for the most exceptional cases and be held to a "demanding standard." United States v. Beggerly, 524 U.S. 38, 46–47 (1998). As the Supreme Court has observed, an independent equitable action to alter a facially-valid judgment "should be available only to prevent a grave miscarriage of justice." *Id.* at 47.

Here, the independent equitable action exception does not apply because Plaintiffs have failed to even allege all of the necessary elements of such a claim. The "essential elements" of an independent equitable claim to collaterally impeach another court's judgment are:

> (1) a judgment which ought not, in equity and good conscience, to be enforced;
>
> (2) a good defense to the alleged cause of action on which the judgment is founded;
>
> (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense;
>
> (4) the absence of fault or negligence on the part of the defendant; and
>
> (5) the absence of any adequate remedy at law.

Beggerly, 524 U.S. at 41; *see also* Carteret Savings & Loan Ass'n v. Jackson, 812 F.2d 36, 39 n.6 (1st Cir. 1987); Bankers Mortgage Co. v. United States, 423 F.2d 73, 79 (5th Cir. 1970), *cert. denied*, 399 U.S. 927 (1970); National Surety Co. v. State Bank, 120 F. 593, 599 (8th Cir. 1903). While Plaintiffs' devote many pages of their memorandum to the historical development of limited liability for corporations and the purported unfairness of the Pennsylvania judgment, they

are nonetheless silent as to what "good defense" NATCO would have had against the original claim that it breached the collective bargaining agreement. To the contrary, Plaintiffs have admitted in the pleadings that NATCO failed to pay its employees for wages and benefits that were due under that agreement. *See* 1st Am. Reply to Countercls. at ¶ 6. Plaintiffs are silent as to what fraud or mistake prevented NATCO from obtaining the benefit of its "good defense" before the arbitration panel. They are likewise silent as to what fraud or mistake prevented NATCO from appearing and asserting any defense or objection in the Pennsylvania district court. Plaintiffs nowhere articulate how NATCO is free from fault or negligence in allowing the default judgment to enter against it.

Even with respect to the equity and fairness of the Pennsylvania judgment, Plaintiffs' arguments are largely wrong or beside the point. As Teamsters 430 explained at length in its memorandum in opposition to Plaintiffs motion to strike jury demand, alter ego claims are not *solely* equitable in nature, particularly where, as here, they are asserted for the purpose of collecting on a unpaid judgment-debt. *See* International Fin. Servs. Corp. v. Chromas Technologies Canada, Inc., 356 F.3d 731, 736 (7th Cir. 2004); Crane v. Green & Freedman Baking Co., 134 F.3d 17, 22 (1st Cir. 1998); William Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 136 (2d Cir. 1991); *see also* pages 6–10 of Defs.' Memo. in Opp. to Pls.' Mot. to Strike Jury Demand dated November 15, 2005. In the labor law context, the courts have often upheld awards of liquidated damages based on their recognition of the inherent difficulty in calculating the damages that flow from an employer's failure to make union fund contributions and their reluctance to allow employers to ignore the terms of agreed-upon liquidated damages provisions. *See*, *e.g.*, United Order of American Bricklayers & Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc., 519 F.2d 331, 333–34 (7th Cir. 1975). As

the Sixth Circuit explained in affirming a liquidated damages award, the harm "comes from many sources, including the loss of the use of the money expected at a certain time, administrative costs and collection efforts, . . . and the uncertainty of whether the contribution will ever be collected." Bricklayers Pension Trust Fund v. Rosati, Inc., 23 Fed. Appx. 360, 361 (6th Cir. 2001)(unpublished decision); *see also* Chicago Dist. Council of Carpenters Pension Fund v. Industrial Erectors, Inc., 840 F. Supp. 1248, 1257–58 (N.D. Ill. 1993). "Such collection efforts are 'so intertwined with on-going operations that their separate value is most difficult to measure.'" Rosati, 23 Fed. Appx. at 361 (quoting Board of Trustees v. Udovch, 771 F. Supp. 1044, 1049 (N.D. Cal. 1991)). Here, of course, liquidated damages have accrued *for years* because the Miranda Entities (assuming they are a single employer or alter egos of one another) first ignored the express terms of the collective bargaining agreement—which provides for liquidated damages—and then defied the resulting arbitration award and eventual federal court judgment. Any "unfairness" is entirely of the Plaintiffs' own making.

Finally, even if Plaintiffs could establish that they meet the "demanding standard" necessary to amend or vacate the judgment of a coordinate district court, there are prudential reasons why this Court should refrain from granting the requested relief and, instead, refer the matter back to the rendering court. As the First Circuit explained in Indian Head, there is an interest in comity among the federal district courts which counsels that the registering court refer the question of relief from a prior judgment to the court which originally rendered it. *Id.*, 689 F.2d at 249. Efficient judicial administration is also furthered if the registering court defers to the original court because it "is likely to be more familiar with the issues raised by the motion for relief from judgment." *Id.*; *see also* United States *ex rel.* Mosher Steel Co. v. Fluor Corp., 436 F.2d 383, 385 (2d Cir. 1970), *cert. denied*, 402 U.S. 945 (1971). Even though this case involves

a default judgment, the rendering court is still more familiar than this one with the affidavits and arguments that were presented in support of the liquidated damages award.

Moreover, the whole purpose of the registration statute—to simplify the collection of judgments—is furthered by deferring to the rendering court because a judgment might be registered in multiple districts, and requiring a successful plaintiff to repeatedly litigate the validity of the judgment in different fora would impose an unfair burden on judgment creditors seeking to enforce their judgments. Indian Head, 689 F.2d at 249; *see also* Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031, 1034 (7th Cir. 2000)("A judgment may be registered in many districts, . . . and it would not make much sense to allow each of these districts to modify the judgment under Rule 60(b), potentially in different ways."); Coleman v. Patterson, 57 F.R.D. 146, 149 (S.D.N.Y. 1972).

**Conclusion**

For the foregoing reasons, the Court should refrain from considering the issues raised in Plaintiffs' motion for summary judgment until discovery is complete and the Court can consider them in light of the merits of the case. Assuming, as the Plaintiffs request, that the Miranda Entities are a single employer and alter egos, there is no question that due process was satisfied. If the Mirada Entities do not have separate identities in the eyes of the law, then notice to one was notice to all. If Plaintiffs wish to challenge the grounds for the Pennsylvania court's unambiguous award of "liquidated damages," then their proper recourse is to file an appropriate motion or action in that forum. Plaintiffs' fairness arguments are substantively flawed, and in

any event, there are prudential concerns of comity and judicial efficiency that require this Court to defer to the Pennsylvania court.

Respectfully Submitted,

Christopher H. Little (#1789)
Scott K. Pomeroy (#6044)
Little Medeiros Kinder Bulman & Whitney, P.C.
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 521-3555

**Counsel for Defendants Teamsters Local Union No. 430; Teamsters Local Union No. 776; Daniel A. Virtue, in his capacity as President of Teamsters Local Union No. 776; and John L. Fogle, in his capacity as Secretary of Teamsters Local Union No. 776.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March , 2006, I caused to be served by first class mail, postage prepaid a copy of the within Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment to each of the following:

Max Wistow, Esq.
Jeffrey A. Mega, Esq.
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903

Thomas J. McAndrew, Esq.
One Turks Head Place, Suite 205
Providence, RI 02903

Wendy R Novak

scott/A114/1323