UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC. AND MICHAEL MIRANDA, Plaintiffs, | : | |
| V. | : | C.A. NO: 05-348L |
| TEAMSTERS LOCAL UNION NO. 430, TEAMSTERS LOCAL UNION NO. 776, DANIEL A. VIRTUE *in his capacity as President of Teamsters Local Union No. 776* AND JOHN L. FOGLE *in his capacity as Secretary of Teamsters Local Union No. 776,* Defendants. | : | |

**PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Michael Miranda ("Miranda") and North Atlantic Distribution, Inc. ("NORAD") submit this Reply Memorandum in response to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment (hereinafter, "Defendants' Memo.").

Miranda and NORAD are not asking this Court to alter or amend the default judgment entered in favor of Teamsters Local Union No. 430 and against North Atlantic Transport Company of Rhode Island ("NATCO") in the Pennsylvania Action.

NORAD and Miranda are not seeking to effect in any way Local 430's efforts to enforce the default judgment against NATCO.

Miranda and NORAD's position is simple and straightforward: Even if Miranda and NORAD are alter egos of and/or single employers with NATCO, or

are subject to veil piercing, the 2003 **default judgment**[1] obtained by Local 430 solely against NATCO cannot be enforced against Miranda or NORAD without allowing them to litigate anything beyond their relationship with NATCO. There are two reasons for this. First, to do so would violate their due process rights. Second, the application of any of the doctrines (veil piercing, single employer, alter ego) are equitable in nature, and it would be inequitable as a matter of law to apply the default to either of them.

1. Plaintiffs Due Process And Equity Arguments Are Ripe For Decision

The defendants urge the Court to conduct further discovery and even have a trial in this matter prior to deciding the issues raised in Plaintiffs' Motion for Summary Judgment. Nevertheless, Rule 56 of the Federal Rules of Civil Procedure is very clear that "[t]he judgment sought shall be rendered forthwith...if...there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Plaintiffs have admitted – for, and only for, the purposes of the pending Motion for Summary Judgment - that they are alter egos of NATCO and/or single employers or subject to veil piercing with that corporation. [2]

Numerous courts, including this one, have allowed parties to concede facts for the purposes of a Motion for Summary Judgment. See Silverstein v. BCS Financial Corp., 1999 WL 160232, at *2 (N.D. Ill. March 10, 1999) ("For purposes of Summary Judgment, BCS concedes that it is an alter ego of

[1] The default judgment is the sole basis for relief sought by Local 430. See Defendants' Answer and Counterclaims pp. 11, 13, 14.
[2] Hereinafter unless the context otherwise requires it, Plaintiffs will use the term "derivative liability" so as to avoid the necessity of repeatedly referring to all three theories of liability.

DBS."); Branch Metal Processing, Inc. v. Boston Edison Co., 952 F.Supp. 893, 903 (D.R.I. 1996) ("While Boston Edison generally disputes the fact that the streetlights in question contain any PCBs, it concedes this point for purposes of its summary judgment motions."); Gill v. Franklin Pierce Law Center, 899 F.Supp. 850, 853 (D.N.H. 1995) ("Defendant admits that plaintiff was dismissed from its Juris Doctor program, and further admits, for the purposes of its Summary Judgment Motion only, that plaintiff is an individual with a disability."); In Re Dwyer, 250 B.R. 472, 474 (Bankr. D.R.I. 2000) ("For purposes of the Motion to Reconsider and the Summary Judgment Motion, the Trustee concedes that Maurice had only bare legal title, but argues that such an interest nonetheless constitutes an economic interest of some value to the estate."); Beacon Mutual Ins. Co. v. OneBeacon Ins. Group, 290 F.Supp.2d 241, 244 (D.R.I. 2003) ("Defendant concedes, for Summary Judgment purposes, that plaintiff can prove non-functionality of its Marks.").

Defendants confuse the requirement that there be an "actual controversy" with this Court's inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). For instance, defendants rely upon Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198 (1st Cir. 2002) in support of their position that this Court should not resolve speculative and hypothetical disputes which may never be reached depending on future factual determinations. Defendants' Memo. p. 7. However, in Gun Owners Action League, Inc., the First Circuit ruled that Plaintiffs' action

was not ripe because they merely alleged that a statute placing new restrictions on guns was unconstitutionally vague, "but not any particular instances of enforcement." Id. at 205. In contrast, there is an actual controversy in the case at bar because Local 430 advised NORAD that it was going to seek to hold NORAD responsible for the satisfaction of the Pennsylvania Action default judgment (and also threatened that Miranda may well be named as a defendant).[3] Carrying out those threats, Local 430 has actually asserted three Counterclaims against Plaintiffs.

This Court is presented with two options. On the one hand, it can hear the present Motion which has already been briefed, presents no questions of fact and has the potential to end the entire dispute between the parties. In the alternative, Local 430 suggests, this Court can allow the parties to complete discovery[4], to prepare for and to conduct a trial as to whether one or both Plaintiffs have derivative liability (the very fact that Plaintiffs acknowledge for the limited purpose of their Motion for Summary Judgment). Is there any question that the first option is judicially more logical and economical than the second? If this Court were presented with a contractual dispute wherein the defendant pleaded the affirmative defense of Release, should a proffered Motion for Summary Judgment based upon such defense be delayed until after a trial of the underlying claims?

---

[3] See Miranda Aff. ¶8 attached as Exhibit B to Memorandum of Law in Support of Plaintiffs North Atlantic Distribution, Inc. and Michael Miranda's Motion for Summary Judgment (hereinafter, "Plaintiffs' Memo.").

[4] Local 430 has recently filed a Motion with this Court requesting that the close of discovery be extended an additional 60 days despite the representation in its memorandum that "discovery requirements here are not extensive and may be completed relatively soon." Defendants' Memo. p. 7.

2. Notice Of The Pennsylvania Action To NATCO Did Not Satisfy NORAD And Miranda's Due Process Rights

Local 430 has **cited not one case** where following a **default** judgment a subsequent action successfully imposed derivative liability based on the default against an individual/entity not party to the original proceeding without first allowing an opportunity to be heard on the underlying claims. It is this very fact (i.e. the underlying judgment against NATCO having been obtained by default) which makes the case at bar distinguishable from **each and every** authority relied upon by Local 430.[5] On the other hand, Plaintiffs cite several cases directly on point where courts have refused to enforce **default** judgments against other persons or entities inquiring only as to their relationship with the defaulted defendant. To do so, they have held, would constitute a violation of due process. Motores De Mexicali, S.A. v. Superior Court, 51 Cal.2d 172, 331 P.2d 1 (Cal. 1958); Katzir Floor and Home Design, Inc. v. M-MLS.COM, 394 F.3d 1143 (9th Cir. 2004); Bates Marketing Assoc., Inc. v. Lloyd's Electronics, Inc., 190 N.J. Super. 502, 464 A.2d 1142 (N.J. Super. Ct. App. Div. 1983); and Butterfield Land Co. v. J.S. Furniture, 2005 WL 546500 (Cal. Ct. App. March 9, 2005).

While Local 430 seeks to make something of the fact that most of the cases cited by Plaintiffs deal with amending a judgment to add an alter ego, the result sought by Local 430 in the case at bar is identical to that obtained by amending a judgment. The Union is seeking a declaration that Miranda and

[5] Miranda and NORAD concede that they probably would not be allowed to litigate anything beyond their relationship with NATCO if NATCO had, in fact, defended itself in the Pennsylvania Action.

NORAD are liable to satisfy the judgment entered in the Pennsylvania Action. See Defendants' Answer and Counterclaims pp. 11, 13, 14. These procedural mechanisms (amending a judgment to add an "alter ego" versus seeking a declaration that an individual/corporation is an "alter ego" and therefore responsible to satisfy such judgment) cannot be distinguished from each other when dealing with the constitutional right to due process. There is no substantive difference at all. In neither case did the subsequent defendant have adequate representation in the proceeding which resulted in the default judgment.

Local 430 cites numerous cases in support of its position that derivative liability may be imposed upon a party to a later proceeding even though that party was not named in the proceeding in which unfair labor practices were found. Defendants Memo. p. 8. As stated, **not one of these cases deal with a situation where the underlying award was obtained by default**. For example, Southeastern Envelope, 246 N.L.R.B. 423, 424 (1979), relied upon by Defendants, specifically states that the Alter Ego "**did defend itself through the representation of Expandvelope** in the earlier unfair labor practice proceeding." (Emphasis added). In addition, in Viking Industrial Security, Inc. v. N.L.R.B., 225 F.3d 131, 135 (2nd Cir. 2000), the Second Circuit ruled that "because the businesses that compose a 'single employer' are deemed to have identical interests, the **representation of the interests of one of them at the unfair labor practice hearing** amounts to representation of both for the purposes of due process." (Emphasis added).

While Local 430 attempts to distinguish the situation before this Court from Section 59(5) of the Restatement (Second) of Judgments by asserting that it is not relying upon res judicata, this is precisely the mechanism upon which defendants must rely. The entire Restatement of Judgments deals with the preclusive effects of judgments in civil actions:

> The Restatement, Second, of Judgments deals with the **preclusive effects of judgments in civil actions**. "Preclusive effects" refers to limitations on the opportunity in a second action to litigate claims or issues that were litigated, or could have been litigated, in a prior action.[6]

Restatement (Second) of Judgments p. 1. (Emphasis added). The general rule set forth in Section 59 is that a judgment in an action to which a corporation is a party has no preclusive effects on a person who is an officer, director, stockholder, or member of a non-stock corporation. Restatement (Second) of Judgments, § 59 (1982). Subsection 59(5) is precisely on point by indicating that "a judgment against a corporation that is found to be the alter ego of a stockholder or member of the corporation establishes personal liability of the latter only if he is given **notice that such liability is sought to be imposed** and fair opportunity to defend the action resulting in the judgment." (Emphasis added). Restatement (Second) of Judgments § 59(5) (1982). (Emphasis added). Comment G following Section 59(5) addresses the very situation before this Court:

> If at the outset of the litigation the opposing party has manifested an intention to bind individually the

[6] The other preclusive doctrine, collateral estoppel, applies only when an issue is actually litigated. See Lee v. U.S., 124 F.3d 1291, 1296 (Fed. Cir. 1997).

> persons associated with the corporation, and effect service of process addressed to those persons individually, adequate opportunity is afforded them to defend against the asserted liability. On the other hand, if the claim of individual liability is made at some later stage in the action, the judgment can be made individually binding on a person associated with the corporation only if the individual to be charged, personally or through a representative, had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved.

Id.

Neither Miranda nor NORAD had any indication or notice that they would be pursued by Local 430 to satisfy NATCO's contractual obligations at the time that the Pennsylvania Action default judgment was entered.[7] The situation now before this Court is analogous to that contemplated by Rule 54(c) of the Federal Rules of Civil Procedure which provides that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." This limitation is in place because a "defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." 10 Charles Alan Wright, Arthur R. Miller, Federal Practice and Procedure, § 2663 (1998). See also Libertad v. Sanchez, 134 F.Supp.2d 218, 230 (D.P.R. 2001), quoting In re Dierschke, 975 F.2d 181, 185 (5th Cir. 1992) ("Rule 54(c), and for that matter fundamental fairness, dictate that a

[7] See Miranda Aff. ¶8, attached as Exhibit B to Plaintiffs' Memo. which states, "On June 9, 2005, I was **advised for the very first time** that Local 430 was seeking to enforce the default judgment which it obtained against NATCO in Civil Action No. 02-1461 in the United States District Court for the Middle District of Pennsylvania, against NORAD and possibly against me..." (Emphasis added). In addition, refer to Local 430's Complaint against NATCO in the Pennsylvania Action which is attached as Exhibit E to Plaintiffs' Memo.

judgment by default operates as a deemed admission only as to the relief requested in the complaint.") Similarly, Miranda and NORAD were justified in their reliance that Local 430 was only pursuing NATCO, a failing company which largely ceased its business operations prior to the Pennsylvania Action[8], for damages arising out of NATCO and Local 430's collective bargaining agreement.

3. Rhode Island Is the Proper Forum For NORAD And Miranda To Adjudicate This Matter

Plaintiffs have not asked this Court to amend or vacate the judgment entered in the Pennsylvania Action either pursuant to Rule 60(b) of the Federal Rules of Civil Procedure or through an independent action in equity.

As a preliminary matter, Miranda and NORAD were not parties to the Pennsylvania Action and as such, have never had standing to file a Rule 60(b) Motion with the United States District Court for the Middle District of Pennsylvania seeking to modify or vacate the default judgment obtained solely against NATCO.

Local 430 relies upon Indian Head Nat'l Bank of Nashua v. Brunelle, 689 F.2d 245, 247-8 (1st Cir. 1982) in an attempt to support its position that Pennsylvania is the appropriate forum to evaluate the fairness of requiring Miranda and NORAD to satisfy the default judgment. In Indian Head Nat'l Bank of Nashua, a $67,919.78 default judgment was entered against the

[8] See Miranda Aff. ¶¶6, 7 attached as Exhibit B to Plaintiffs' Memo. which state, "On October 26, 2001, NATCO largely **ceased operations** at its York, Pennsylvania terminal due to **lack of business**; A few months after closing its York, Pennsylvania terminal, **NATCO terminated its Rhode Island operations** due to **lack of business**." (Emphasis added).

defendant, Conproco Corporation, in the United States District Court for the Eastern District of Pennsylvania. 689 F.2d at 247-8. Next, the Plaintiff registered the judgment in the United States District Court for the District of New Hampshire at which time Conproco Corporation filed a Rule 60(b)(6) Motion in the District of New Hampshire, which was granted. Id. The First Circuit Court of Appeals reversed, holding that "a registration court errs in entertaining a Rule 60(b) motion that alleges neither a judgment void for lack of personal jurisdiction nor grounds that would support an independent equitable action." Id. at 252. This holding would be significant if NATCO petitioned this Court for relief from the Pennsylvania Action default judgment. However, NATCO is not a party in the case at bar.

Nor, does it appear, that Plaintiffs can file an independent equitable action to collaterally attack a foreign judgment. This too is a mechanism for a defendant actually named in an underlying action to modify or alter a judgment. One need not look further than the third "essential element"[9] identified by Local 430 to conclude that such an action applies only to a named party to an underlying action:

> (3) fraud, accident, or mistake which prevented **the defendant** in the judgment from obtaining the benefit of his defense.

Miranda and NORAD were not defendants in the Pennsylvania Action.[10]

---

[9] Local 430 has identified 5 "essential elements" for an independent action which seeks to alter a facially-valid judgment. Defendants Memo. p. 16, citing United States v. Beggerly, 524 U.S. 38, 46-47 (1998).

[10] Miranda and NORAD, not attempting to alter the Pennsylvania Action default judgment, are not required to prove the existence of the 5 "essential elements" identified by Local 430.

Nor should it be assumed that Miranda and NORAD have had sufficient contacts to subject themselves to the jurisdiction of the Middle District of Pennsylvania. To the contrary, Plaintiffs assert that they are not subject to that Court's jurisdiction and should not be forced to enter the fray in that jurisdiction in order to contest the default judgment.

Rather, Plaintiffs argue that no court sitting in equity will enforce (against Miranda and NORAD) the so-called "liquidated damages," which have purportedly grown from $27,513.28 to $2,243,377.10 as of February 7, 2006.[11] This represents an increase of 8,153% over the underlying claim. Using Defendants' $2,243,377.10 as of February 7, 2006 and bringing it forward by $1,529.28 per day until April 13, 2006, the date of the hearing for Summary Judgment, the so-called "liquidated damages" will purportedly increase by another $97,873.92, exclusive of interest. In that roughly 2-month period, the liquidated damages represent 355% of the underlying claim! Thus, it is clear that the "liquidated damages" provision is an in terrorem clause which constitutes an unenforceable penalty as a matter of law. For example, there is no possible way that an employer, honestly believing that it has a valid reason to not pay an employee 4 hours of pay and/or "down time" (at $20 per hr.), could, if there were any doubt, risk disputing the matter with his employee. The "liquidated damages" provision in the case at bar would make the worker's claim (of $80 per day) grow in the amount of $160.00 each day until the matter is adjudicated. This very phenomenon occurred in this case. NORAD paid

[11] See Local 430's Mediation Statement dated February 7, 2006 which calculates Local 430's alleged damages as of February 7, 2006.

$42,931.25[12] to Local 430, while denying liability in this matter, shortly after being threatened with derivative liability on June 9, 2005. See Miranda Aff. ¶¶ 11 and 12 attached as Exhibit B to Plaintiffs' Memo.

All authorities relied upon by Local 430 in support of its position that liquidated damages are permissible in a collective bargaining agreement are factually distinguishable (and wildly so at that). These cases actually support Plaintiffs position that the clause at issue is an unenforceable penalty. All of the liquidated damages clauses referenced in Local 430's authorities have reasonable limitations, in marked contrast to the provision contained in Local 430's collective bargaining agreement. See United Order of American Bricklayers and Stone Masons Union No. 21, supra, 519 F.2d at 332. ("The portion of the contract in issue provides: ...shall in addition to the aforesaid hourly contributions pay an additional amount of ten (10%) percent of the amount due in liquidated damages for failure to pay..."); Bricklayers Pension Trust Fund v. Rosati, Inc., 23 Fed. Appx. 360, 361 (6th Cir. 2001) ("The total amount of liquidated damages is limited to 20% of the total contribution plus interest."); Chicago District Council of Carpenters Pension Fund v. Industrial Erectors, Inc., 840 F.Supp 1248, 1256-7 (N.D. Ill. 1993) ("To allow the funds to recover liquidated damages outside the statutory framework of section 1132(g)(2), with its 20% limitation, would be to allow funds with no 'unpaid contribution' to avoid the strictures of the 20% rule and in some cases to afford them a fuller remedy than that available to funds with 'unpaid contributions.'").

---

[12] This represented all sums allegedly owed, excluding "liquidated damages," plus an interest calculation.

## Conclusion

Plaintiffs respectfully request that their Motion For Summary Judgment be granted.

North Atlantic Distribution, Inc. and
Michael Miranda
By their Attorneys

Max Wistow (#0330)

Jeffrey A. Mega (#6441)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)

Thomas J. McAndrew, Esq. (#1001)
One Turks Head Place, Ste. 205
Providence, RI 02903
(401) 455-0350 (Telephone)
(401) 455-0882 (Facsimile)

## CERTIFICATION

I hereby certify that I mailed a true copy of the within, on the 7th day of April, 2006, to the following:

Christopher H. Little, Esq.
Scott K. Pomeroy, Esq.
Little Medeiros Kinder Bulman & Whitney, PC
72 Pine Street
Providence, RI 02903