**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC.; and MICHAEL MIRANDA,<br><br>Plaintiffs,<br><br>v.<br><br>TEAMSTERS LOCAL UNION NO. 430; TEAMSTERS LOCAL UNION NO. 776; DANIEL A. VIRTUE, in his Capacity as President of Teamsters Local Union No. 776; and JOHN L. FOGLE, in his Capacity as Secretary of Teamsters Local Union No. 776,<br><br>Defendants. | C.A. No. 05-348 L |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Particularly in light of the several discovery motions now pending in this case, this Court should, in resolving the questions of relevance presented in this motion, take into account the scope and extent of the discovery regarding internal financial and operational details of Plaintiffs' own businesses that Plaintiffs have improperly demanded that Teamsters 430 provide to them.

Teamsters 430 first issued its document requests to Plaintiffs NORAD and Miranda in December 2005. Despite counsel's efforts to resolve this discovery dispute informally, Plaintiffs have steadfastly refused to produce a broad swath of obviously relevant and responsive documents. Plaintiffs' relevance objections, as discussed in more detail below, are meritless. While refusing to produce documents that are clearly relevant to the declaratory relief that Plaintiffs seek and Teamsters 430's counterclaims, Plaintiffs have issued document requests,

contention interrogatories, and a Rule 30(b)(6) deposition notice, all of which seek *extremely detailed* information regarding Plaintiffs' own internal finances and business operations. Even a summary review of Plaintiffs' own discovery requests confirms that the documents Teamsters 430 seek to compel are relevant. Despite the improper nature of Plaintiffs' requests, Teamsters 430, in the spirit of cooperating in discovery, provided detailed factual responses to Plaintiffs' interrogatories even though Plaintiffs' continue to refuse to provide Teamsters 430 with all of the documents relevant to the areas of Plaintiffs' own inquiries. When Teamsters 430 did not fully answer Plaintiffs' discovery to degree of exactitude demanded by Plaintiffs, Plaintiffs filed motions to compel more responsive responses to their objectionable and improper requests.

Presently, discovery is scheduled to close on June 27th, and Plaintiffs still have not produced the highly relevant documents and information that Plaintiffs fault Teamsters 430 for not providing back to them. Plaintiffs' conduct with respect to discovery, and particularly with respect to its meritless motion practice, has been abusive, and is worthy of sanctions under Rule 37.

In this case, North Atlantic Transport Co. of Rhode Island ("NATCO"), a Miranda-controlled entity, breached the terms of a collective bargaining agreement with respect to its York, Pennsylvania workforce. Teamsters 430 sued in the local federal district court and obtained a default judgment against NATCO. Subsequently, Teamsters filed its default judgment in this Court (C.A. No. 05-006L), and in turn Miranda and NORAD preemptively brought this action for a declaration that neither of them are liable for the judgment against NATCO. Teamsters 430 then asserted counterclaims alleging that Plaintiffs are liable based on labor law's "single employer" and "alter ego" doctrines as well as the similar, but analytically distinct, corporate "alter ego" doctrine. *See*, *e.g.*, Countercl. at ¶¶ 11–28.

Under the single employer doctrine, two or more nominally separate individuals or business entities can be deemed to be a single "employer" as defined in § 2(2) of the National Labor Relations Act, 29 U.S.C. § 152(2). As the doctrine has developed, the relevant inquiries concern the *independence* of the individuals and entities that are alleged to constitute a single employer the degree of *integration* and *interrelation* between them. *See* Task Force Security & Investigations, Inc., 323 N.L.R.B. 674, 677 (1997); Alabama Metal Prods., Inc., 280 N.L.R.B. 1090 (1986); Penntech Papers, Inc. v. NLRB, 706 F.2d 18, 25 (1st Cir. 1983), *cert. denied*, 464 U.S. 892 (citing Radio & Television Broadcast Union v. Broadcast Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965)). "Single employer status ultimately depends upon 'all the circumstances of the case' and is marked by an absence of an 'arm's length relationship found among unintegrated companies.'" Penntech, 706 F.2d at 25 (quoting Local 627, Int'l Union of Operating Eng'rs v. NLRB, 518 F.2d 1040, 1045-46 (D.C. Cir. 1975), *aff'd on this issue sub nom.*, South Prairie Constr. Co. v. Local 627, Int'l Union of Operating Eng'rs, 425 U.S. 800 (1976)).

Similarly, the focus of the "alter ego" doctrine under labor law is on the *continuity* of a single business between or among several nominally different individuals or business entities. As the First Circuit has explained, the alter ego analysis "is typically applied where an employer attempts to avoid its obligations under a collective bargaining agreement, and is particularly common in the context of successor employers, where the successor is 'merely a disguised continuance of the old employer.'" C.E.K. Indus. Mechanical Contrs., Inc. v. NLRB, 921 F.2d 350, 354 (1st Cir. 1990)(quoting Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106 (1942)). However, the alter ego analysis may also be used where the entities involved are "not successors

but rather parallel operations." *Id.*; *see also* Mining Specialist, Inc., 314 N.L.R.B. 268, 271 (1994); Fugazy Continental Corp., 265 N.L.R.B. 1301 (1982).

In their opposition memorandum, Plaintiffs contend, in essence, that the only documents relevant or discoverable in this case are those that pertain narrowly to transactions: (a) directly between NATCO and NORAD; or (b) directly between NATCO and Miranda. Plaintiffs' restrictive view of what is relevant in this matter must be rejected because it misconstrues the scope of the inquiry necessary under the applicable single-employer and alter ego doctrines, upon which Teamsters 430's claims are based.

Here, the whole of the operations and internal workings of all of the inter-related entities are certainly within the scope of relevant inquiries. Likewise, any evidence which allows the various entities to be compared and evaluated in light of each other is clearly relevant.

Under Rule 26, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, . . . ." Fed. R. Civ. P. 26(b)(1). Notwithstanding the 2000 amendments to the civil rules, "[t]he present standard—'relevant to the claim or defense of any party'—is still a very broad one." 8 Wright, Charles A. *et al.*, Federal Practice & Procedure: Civil 2d § 2008 (Supp. 2004). Moreover, relevance for discovery purposes is viewed more liberally than relevance for evidentiary purposes: "Relevant information need not be admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Here, Teamsters 430's document requests are reasonably calculated to elicit evidence that is relevant to understanding the overall picture of each of the relevant business entities—including Miranda as an individual—as well as to understanding the degree of integration and the continuity in their operations, management, and finances. For example, in ascertaining the

degree of integration between NORAD's business and NATCO's business, the total picture of NORAD's contracts and customer correspondence is just as relevant as that of NATCO's. Plaintiffs apparently contend that NATCO did not have any contract with Volkswagen and that any contracts that NORAD might have had with Volkswagen are irrelevant. Yet, documents that Plaintiffs have produced indicate that NATCO billed more than $500,000 to Volkswagen in 2001 alone. Even where Plaintiffs have produced some contracts with other NATCO customers, they have produced almost none of the related correspondence that reasonably should exist with respect to those contracts.[1] The documents responsive to Request 2 that Plaintiffs refuse to produce are highly relevant, *inter alia*, to such questions as whether NATCO was performing NORAD contracts and vice versa.

As Plaintiffs' own interrogatories and Rule 30(b)(6) notice attest, NORAD's and NATCO's use of assets, equipment, facilities, and physical improvements to those facilities are highly relevant in this case. In their discovery requests, Plaintiffs do not limit the inquiry to a few discrete asset transactions between the two companies. How can Plaintiffs contend that the full extent of each entity's operations, assets, sales, and employees is relevant for purposes of their interrogatories to Teamsters 430, but not relevant for purposes of Teamsters 430's document requests to them? Likewise with respect to each company's financing arrangements, loan guarantees, security agreements, and credit relationships? Documents that show the extent to which Miranda loaned or guaranteed working capital for NORAD, NATCO, and the other companies he controlled are clearly relevant to the question of whether Miranda treated the companies as one integrated enterprise or without regard to their nominal corporate boundaries.

[1] As a related matter that is not part of this motion, Plaintiffs' production to date contains essentially no computer files or emails at all. Teamsters 430 has noticed Rule 30(b)(6) depositions to inquire into whether such materials ever existed and why they have not been produced.

Documents concerning Miranda's use of NORAD and NATCO assets for personal and family purposes are relevant because they tend to show the unity of interest between Miranda as an individual and his respective companies. Moreover, Miranda's use of corporate assets for travel and entertainment, to purchase or lease personal vehicles or a luxury yacht, or to fund personal loans to himself and other family members are matters that are clearly relevant under Teamsters 430's third count which is based on the traditional corporate alter ego analysis. Such discovery pertains to issues of under-capitalization, dissipation of assets, disregard of corporate formalities, as well as other issues that are relevant to the traditional alter ego analysis. *See* National Hotel Assocs. v. O. Ahlborg & Sons, Inc., 827 A.2d 646, 652–54 (R.I. 2003); UST Corp. v. General Road Trucking Corp., 783 A.2d 931, 940–41 (R.I. 2001); Heflin v. Koszela, 774 A.2d 25, 30 (R.I. 2001); Doe v. Gelineau, 732 A.2d 43, 48 (1999).

For the foregoing reasons and those contained in Teamsters 430's initial memorandum, the Court should strike Miranda's and NORAD's objections, compel Plaintiffs to produce all

documents responsive to each of Teamsters 430's requests, and award Teamsters 430 its reasonable costs and attorneys fees in bringing this motion.

TEAMSTERS LOCAL UNION NO. 430;
TEAMSTERS LOCAL UNION NO. 776;
DANIEL A. VIRTUE, in his Capacity as
President of Teamsters Local Union No. 776;
and JOHN L. FOGLE, in his Capacity as
Secretary of Teamsters Local Union No. 776,

By Their Attorneys,

Christopher H. Little (#1789)
Scott K. Pomeroy (#6044)
LITTLE MEDEIROS KINDER BULMAN &
WHITNEY, P.C.
72 Pine Street
Providence, RI 02903

(401) 272-8080
Fax (401) 521-3555

Date: June 8, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June 2006, I served a copy of the within Reply Memorandum in Support of Defendants' Motion to Compel Production of Documents by U.S. mail to each of the following:

Max Wistow, Esq.
Jeffrey A. Mega, Esq.
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903

Thomas J. McAndrew, Esq.
One Turks Head Place, Suite 205
Providence, RI 02903

Wendy R. Novak

scott/A114/1403