UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC. AND MICHAEL MIRANDA, Plaintiffs, | : | |
| V. | : | C.A. NO: 05-348L |
| TEAMSTERS LOCAL UNION NO. 430, TEAMSTERS LOCAL UNION NO. 776, DANIEL A. VIRTUE *in his capacity as President of Teamsters Local Union No. 776* AND JOHN L. FOGLE *in his capacity as Secretary of Teamsters Local Union No. 776,* Defendants. | : | |

**PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

Now come the plaintiffs North Atlantic Distribution, Inc. and Michael Miranda hereby objecting to Defendants' Teamsters Local Union No. 430, Teamsters Local Union No. 776, Daniel A. Virtue in his capacity as President of Teamsters Local Union No. 776 and John L. Fogle in his capacity as Secretary of Teamsters Local Union No. 776 (collectively "Local 430") Motion for a Protective Order with respect to Plaintiffs' Rule 30(b)(6) Notice of Deposition served upon Local 430 on May 26, 2006. In accordance with Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiffs seek an affirmative Order compelling the discovery sought by Plaintiffs. Finally, Plaintiffs seek an award of their reasonable expenses, including their attorney's fees. Plaintiffs submit a Memorandum of Law in Support of Plaintiffs' Objection to Defendants' Motion for a Protective Order contemporaneously herewith.

North Atlantic Distribution, Inc. and
Michael Miranda
By their Attorneys

Max Wistow (#0330)

Jeffrey A. Mega (#6441)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)

Thomas J. McAndrew, Esq. (#1001)
One Turks Head Place, Ste. 205
Providence, RI 02903
(401) 455-0350 (Telephone)
(401) 455-0882 (Facsimile)

## CERTIFICATION

I hereby certify that I hand-delivered a true copy of the within, on the 12th day of June, 2006, to the following:

Christopher H. Little, Esq.
Scott K. Pomeroy, Esq.
Little Medeiros Kinder Bulman & Whitney, PC
72 Pine Street
Providence, RI 02903

F:\Miranda, Mike (NORAD) #6523\PLEADINGS\US DISTRICT CT\Plfs' Obj to Defs' Motion For A Protective Order.doc

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC.<br>AND MICHAEL MIRANDA,<br>Plaintiffs, | : | |
| V. | : | C.A. NO: 05-348L |
| TEAMSTERS LOCAL UNION NO. 430,<br>TEAMSTERS LOCAL UNION NO. 776,<br>DANIEL A. VIRTUE *in his capacity as President of Teamsters Local Union No. 776*<br>AND JOHN L. FOGLE *in his capacity as Secretary of Teamsters Local Union No. 776,*<br>Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

Plaintiffs North Atlantic Distribution, Inc. ("NORAD") and Michael Miranda ("Miranda") seek denial of Defendants' Motion for a Protective Order against the taking of certain previously scheduled 30(b)(6) depositions affirmatively compelling the discovery sought by Plaintiffs.

## I. FACTS

It is important to understand the factual and procedural background against which this discovery dispute arises.

Miranda is the President and sole shareholder of two corporations, NORAD and North Atlantic Transport Company of Rhode Island ("NATCO"). NATCO, a non-party to the within action, and Local 430 were parties to a 280-page, pre-printed, collective bargaining agreement ("CBA") for the period

beginning June 1, 1999 through May 31, 2003, which covered NATCO's Pennsylvania workers and which contained the following provision:

> ARTICLE 15.
>
> SEPARATION OF EMPLOYMENT
>
> (a) Upon discharge or upon permanent terminal closing, the Employer shall pay all wages, including vacation pay, in no more than seventy-two (72) hours, excluding Saturdays, Sundays and holidays, due to the employee at the time of discharge or permanent terminal closing. Failure to pay within seventy-two (72) hours of discharge shall subject the Employer to pay liquidated damages in the amount of eight (8) hours pay for each day of delay.

On October 26, 2001, NATCO largely ceased operations at its York, Pennsylvania terminal due to lack of business. Local 430 filed a grievance against NATCO on November 9, 2001 which requested that its members be paid for earned wages, vacation time, sick time and personal days. Local 430's grievance also sought so-called "liquidated damages" pursuant to Article 15 of the parties' CBA. The grievance was submitted to an arbitration panel on May 22, 2002 at which time Local 430's claims were upheld by default due to NATCO's failure to appear at the arbitration. The arbitration panel's decision did not reference any specific dollar amount of damages.

On August 21, 2002, Local 430 filed an action against NATCO in the United States District Court for the Middle District of Pennsylvania (C.A. No. 02-1461) to enforce the arbitration panel's decision (the "Pennsylvania Action"). The Pennsylvania Action sought, among other things, an order directing NATCO to pay the grievants' unused/earned vacation pay, sick time, personal

days, and down time. On February 24, 2003, Local 430 filed a Request For Default Judgment in the Pennsylvania Action as a result of NATCO's failure to answer the Pennsylvania Action which sought $27,513.28 for vacation time, unused sick days, personal days, and down time which were owed to ten of its members and $441,446.40 related to liquidated damages.

On February 28, 2003, default judgment was entered in the Pennsylvania Action in favor of Local 430 and against NATCO in the amount of $516,815.59 ($441,446.40 of which was identified as "liquidated damages" purportedly accruing at the rate of $1,529.28 per day) as of February 14, 2003 plus $1,529.28 per day for "liquidated damages until the claim is paid pursuant to Article 15 of the National Master Automobile Transporters Agreement." The judgment entered in the Pennsylvania Action was registered in the United States District Court for the District of Rhode Island (Misc. 05-006L) on January 7, 2005. **On June 9, 2005, Local 430 advised NORAD and Miranda, for the very first time, that it was seeking to enforce the default judgment in the Pennsylvania Action (previously obtained solely against NATCO) against NORAD and possibly Miranda based upon the "single employer" doctrine**. In addition, Local 430 advised NORAD and Miranda that the judgment had purportedly grown to in excess of $1,810,586.30, exclusive of interest, as of June 9, 2005. At that point, Plaintiff paid Local 430's entire

claim for vacation, sick and personal days, plus interest, but did not pay the "liquidated damages" portion of Local 430's claim.[1]

Plaintiffs filed the present Complaint for Declaratory Judgment (C.A. No. 05-348L), on August 16, 2005. The Complaint seeks, among other things, a declaration regarding whether NORAD and/or Miranda are responsible to satisfy in whole or in part, the judgment entered against NATCO in the Pennsylvania Action. Local 430 filed an answer which asserted three Counterclaims against NORAD and/or Miranda on September 30, 2005, **requesting that this Court declare that NORAD and/or Miranda are alter egos and/or constituted a single employer of NATCO and that Miranda and/or NORAD are liable to satisfy the judgment in the Pennsylvania Action.**

On May 26, 2006, Plaintiffs served a 30(b)(6) Notice of Deposition upon Local 430 seeking all facts relied upon by Local 430 in support of numerous allegations contained directly in Local 430's counterclaims against Plaintiffs. See attached "Exhibit A." The Notice of Deposition contains an exhibit which identifies 16 areas of inquiry. Each area of inquiry was taken directly from allegations made by Local 430 in its counterclaim. Prior to serving the notice of deposition, Plaintiffs attempted to obtain this same information (the factual basis of Local 430's allegations) by propounding interrogatories to Local 430. However, Local 430's answers were incomplete and non-responsive in most

---

[1] Plaintiffs expressly denied that they were responsible to pay <u>any</u> portion of the judgment obtained solely against NATCO but paid the underlying claim solely in an effort to cease any further accrual of "liquidated damages" which were purportedly accruing at the rate of $1,529.28 per day.

circumstances, thereby necessitating a Motion to Compel More Responsive Answers to Interrogatories which is currently pending before this Court. See attached "Exhibit B."

On June 6, 2006, Local 430 filed its Motion for a Protective Order pursuant to Rule 26(c) which improperly, and/or inaccurately takes the position that the 30(b)(6) deposition of Local 430 should not go forward because: (1) the information sought is not "known or reasonably available" to Teamsters 430; (2) the deposition improperly seeks to use Rule 30(b)(6) to elicit information that is protected by the attorney work-product doctrine; (3) the deposition is unreasonably cumulative, duplicative, and burdensome in light of the fact that Local 430 has already provided detailed, written responses to contention interrogatories that concern a nearly identical set of issues; and (4) that Plaintiffs gave Local 430 an unreasonably short an inadequate time to identify and prepare a designee to testify.[2] See Memorandum in Support of Defendants' Motion for a Protective Order p. 2.

## II. ARGUMENT

Rule 26(c) of the Federal Rules of Civil Procedure mandates that "good cause" be shown prior to the granting of a protective order. Fed. R. Civ. P. 26(c). The burden for a protective order is "on the party seeking relief to show some plainly adequate reason therefore." 8 C. Wright & A. Miller, Federal

[2] Local 430's fourth concern will not be addressed in Plaintiffs' Memorandum because the 30(b)(6) deposition which was noticed on May 26, 2006 and originally scheduled to occur on Thursday, June 8, 2006, has been re-noticed for June 26, 2006, thereby providing Local 430 an entire month to prepare. The rescheduling was to avoid the necessity of an emergency hearing and not because Plaintiffs agree that the notice was inadequate. See "Exhibit C."

Practice and Procedure § 2035, at 484 (1994). The United States Court of Appeals for the First Circuit has ruled that "a finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986).

A. The Information Sought By Plaintiffs Is Known Or Reasonably Available To Local 430

Defendants' first two arguments are each correlative of the other. The first is that the information is not available to Defendants but rather to their lawyers and the second is that as a consequence of the lawyers' involvement, such information is privileged from discovery. This Catch 22 argument, if sustainable, could be applied so as to prevent all meaningful discovery in many, many cases. For example, in medical malpractice and products liability cases, the plaintiffs are often without any knowledge of the facts of the medical negligence or the products' defects save what has been developed by counsel. These defendants theory of discovery, as set forth in their Motion for a Protective Order would enable plaintiffs to withhold the essential facts on which their cases were based until revealing them for the first time at trial.

Local 430's assertion that "the information sought is not 'known or reasonably available' to Teamsters 430[3]" contradicts the very assertions made by Local 430 in its counterclaims.[4]

[3] Memorandum in Support of Defendants' Motion for a Protective Order p. 2.
[4] In fact, such a statement may serve as proof that Local 430 and/or its attorneys violated Rule 11 of the Federal Rules of Civil Procedure by making allegations in its counterclaims without any evidentiary support.

To the contrary, the factual information sought by Plaintiffs is clearly "reasonably available" to Local 430 and it has a duty "not only [to] produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." United States v. Taylor, 166 F.R.D. 356, 360-1 (M.D.N.C. 1996), citing Mocker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989); Federal Deposit Ins. Corp. v. Butcher, 116 F.R.D. 196 (E.D.Tenn. 1986); and Mitsui & Co. v. Puerto Rico Water Res. Auth., 93 F.R.D. 62 (D.P.R. 1981). Factual information known by parties' attorneys falls within the category of being "reasonably available" and therefore discoverable, even if such factual information is learned through the discovery process. For instance, in Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co., 137 F.R.D. 267, 283 (D.Neb. 1989), the United States District Court for the District of Nebraska ruled that the defendant's 30(b)(6) designee "must recite the facts upon which Commonwealth relied to support the allegations of its answer and counterclaim which are not purely legal, **even though those facts may have been provided to her or her employer by Commonwealth's attorneys**." (Emphasis added). Similarly, other courts concur.

In Dunkin Donuts, Inc. v. Mary's Donuts, Inc., 206 F.R.D. 518, 520 (S.D.Fl. 2002), the United States District Court for the Southern District of Florida ruled that a 30(b)(6) deponent could not refuse to provide facts supporting Plaintiffs' claims by alleging that Plaintiffs' theories were known only to counsel:

> At the deposition of one of Plaintiffs' 30(b)(6) representatives, Mr. Reno, Plaintiffs' counsel stated that Plaintiffs could not and would not produce a designee on the issue of underreporting because that **evidence was produced in discovery, the theory of underreporting was known only to Plaintiffs' counsel**, and the facts supporting Plaintiffs' claim of underreporting were privileged from discovery as attorney work-product. **Plaintiffs cannot refuse to provide the facts** underlying their underreporting claim. (Emphasis added).

Similarly, in Security Ins. Co. of Hartford v. Trustmark Ins. Co., 218 F.R.D. 29, 34 (D.Conn. 2003), the United States District Court for the District of Connecticut ruled that it does not matter if a 30(b)(6) deponent gains his/her knowledge from documents protected by the work-product privilege:

> TIG's **corporate representative was obliged to gain some understanding of the underlying facts regardless of the source** identifying underlying facts, and to answer questions accordingly. It matters not that the witnesses understanding was gleaned from documents protected as work-product, as the facts within those documents are not subject to protection.

Finally, in Arkwright Mut. Ins. Co. v. National Union Fire Insurance Co. of Pittsburgh, PA., 1993 WL 34678 (S.D.N.Y. 1993), the United States District Court for the Southern District of New York ruled, "To the extent that Arkwright is seeking **factual information related to each of the claims in the litigation**, the use of a 30(b)(6) deposition is wholly appropriate." (Emphasis added).

For example, in a medical malpractice case, plaintiffs invariably allege that a treating doctor was negligent. Through discovery sent from the defendant doctor to the plaintiff, the doctor will invariably inquire regarding

which aspects of his or her treatments were negligent. Local 430 is asserting that such discovery need not be answered and that the plaintiff can instead advise the physician that he/she treated the individual and is therefore in a better position to know what aspects of his/her treatment were negligent and/or that defendant's own records contain the necessary information. This reasoning is contrary to the Rules of Civil Procedure and in no way helps to narrow and identify the issues which will be tried.

The information sought by Plaintiffs – the facts relied upon by Local 430 in support of the allegations contained within its counterclaims – is "reasonably available" to Local 430 and, consequently, an entirely permissible area of inquiry under Rule 30(b)(6).

B. The Information Sought By Plaintiffs Is Not Protected By The Work-Product Doctrine

Numerous courts have ruled that a 30(b)(6) deposition is a perfectly permissibly forum to obtain facts upon which an opponent bases its contentions. Contrary to Local 430's assertion, Plaintiffs are not required to make a showing of substantial need and/or undue hardship. While the First Circuit Court of Appeals has not decided this very issue, it is especially critical of the reasoning contained in the line of authorities relied upon by Local 430. Furthermore, the First Circuit Court of Appeals has ruled in an analogous situation that the information currently sought by plaintiffs in their 30(b)(6) deposition to Local 430 is not protected by the work-product privilege.

Numerous courts have ruled that the work-product doctrine is inapplicable where a 30(b)(6) designee is called upon to testify about the facts

upon which its employer and/or principal relies upon in support of allegations contained in a complaint and/or counterclaim. For instance, in Protective National Ins. Co. of Omaha v. Commonwealth Ins. Co., 137 F.R.D. 267, 278 (D.Neb. 1989), during a 30(b)(6) deposition, "Commonwealth essentially took the position that Murphy could not testify as to facts which had been communicated to her by Commonwealth's lawyers," invoking the attorney-client privilege. After ruling that "counsel was plainly wrong," the Court cautioned that "[i]t is important to distinguish between facts learned by a lawyer, a memorandum or document containing those facts prepared by the lawyer, and the lawyer's mental impressions of the facts. The facts are discoverable if relevant." Id. at 278-9. The Court concluded by ruling that the deponent's 30(b)(6) designee "must recite the facts upon which Commonwealth relied to support the allegations of its answer and counterclaim, which are not purely legal, even though those facts may have been provided to her or her employer by Commonwealth's lawyers." Id.

In United States v. Pepper's Steel & Alloys, Inc., 133 F.R.D. 695, 697 (S.D.Fl. 1990), a 30(b)(6) designee's attorney "repeatedly asserted the work-product privilege...as a basis for refusing to answer questions propounded." At a hearing upon Plaintiffs' Motion to Compel, attorneys for the 30(b)(6) designee argued, "opinion work-product may be reflected in something as subtle as the act of selecting or ordering documents because this may reflect an attorney's opinion as to the significance of those documents in the preparation for his case." Id. at 698. The Court ruled as follows:

> USF & G cannot shield itself from discovery by objecting to all questions which would require the deponent to testify regarding facts learned while reviewing documents selected by USF & G's counsel. Otherwise, every witness that USF & G's counsel prepares for deposition pursuant to Rule 30(b)(6) could assert the work-product doctrine on the basis that he learned the facts while reviewing documents selected by USF & G." Id. at 699.

Other courts have agreed that 30(b)(6) designees must testify regarding the facts in support of allegations contained in complaints and/or counterclaims. In Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, PA., 1993 WL 34678 (S.D.N.Y. 1993) the United States District Court for the Southern District of New York ruled, "To the extent that Arkwright is seeking factual information related to each of the claims in the litigation, the use of a 30(b)(6) deposition is wholly appropriate. In Dunkin Donuts, Inc. v. Mary's Donuts, Inc., 206 F.R.D. 518, 520 (S.D.Fl. 2002), the United States District Court for the Southern District of Florida ruled that Plaintiffs could not refuse to have a 30(b)(6) designee testify about the facts in support of their claim by asserting the work-product doctrine:

> At the deposition of one of Plaintiffs' 30(b)(6) representatives, Mr. Reno, Plaintiffs' counsel stated that Plaintiffs could not and would not produce a designee on the issue of underreporting because that evidence was produced in discovery, the theory of underreporting was known only to Plaintiffs' counsel, and the facts supporting Plaintiffs' claims of underreporting were privileged from discovery as attorney work-product. Plaintiffs cannot refuse to provide the facts underlying their underreporting claim.

Similarly, in Takeda Chemical Ind., Ltd. v. Mylan Laboratories, Inc., 2005 WL 1457696 *1 (S.D.N.Y. 2005), the United States District Court for the Southern District of New York prohibited a party from asserting a theory of patent infringement at trial because its 30(b)(6) designee did not articulate the theory at his deposition but instead, the work-product doctrine was asserted as a basis for refusing to provide such information:

> Takeda deposed a representative of Mylan pursuant to Rule 30(b)(6) Fed. R. Civ. P. at that deposition. At that deposition, Takeda inquired as to the basis for Mylan's contentions that the '777 Patent is invalid, unenforceable or not infringed, other than those disclosed in the September 8 notice. At several points, Mylan's counsel objected to this line of questioning, asserting the attorney-client and work-product privileges...Mylan never articulated any basis for the invalidity of the '777 Patent on the ground of obviousness other than Compound 14 of the Sohda publication. Thereby, it is hereby ORDERED that Mylan may not offer at trial any evidence as to invalidity of the '777 Patent except based on a theory of obviousness.

Finally, in Barrett Ind. Trucks, Inc. v. Old Republic Ins. Co., 129 F.R.D. 515, 518-19 (N.D.Ill. 1990), the United States District Court for the Northern District of Illinois ruled that the work-product doctrine does not protect discovery of the underlying facts:

> However, the work-product doctrine does not protect discovery of the underlying facts of a particular dispute, even if a deponent's response to a particular factual question is based upon information provided by counsel. As noted in Wright & Miller: The Courts have consistently held that the work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the *facts* that the adverse party's has learned, or the *persons from whom he has learned such facts,* or the *existence or non-*

> *existence of documents,* even though the documents themselves may not be subject to discovery.") (Emphasis added by Court) (Citations omitted).

The authorities relied upon by Local 430 in support of its Motion for a Protective Order are readily distinguishable. First, the cases of N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83 (M.D.N.C. 1987) and Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1987) involved situations where parties sought to depose **attorneys** in contrast to serving a 30(b)(6) deposition upon a party. In San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007, 1018 (1st Cir. 1988), the First Circuit described Shelton as "unhelpful" because "in that case, the deponent was defendant's counsel."

Plaintiffs reliance upon Securities and Exchange Commission v. Buntrock, 217 F.R.D. 441 (N.D.Ill. 2003), is equally misplaced. In Buntrock, "the SEC...produced a 12-page list of witnesses, investigative testimony from 49 witnesses and accompanying exhibits – also in a searchable database – and a 7-page explanation of the elements in calculation of the disgorgement from each defendant. The SEC had also provided defendants with evidence summaries from previous investigations and proceedings involving WMI's financial statements." Id. at 443. In contrast, the plaintiffs in the case at bar have been intentionally left in the dark by the defendants in an effort to set the stage for a trial by ambush.

Finally, the cases of F.T.C. v. U.S. Grant Resources, LLC, 2004 WL 1444951 (E.D.La.) and S.E.C. v. Rosenfeld, 1997 WL 576021 (S.D.N.Y.) are equally inappropriate because the party noticing the depositions in those two

cases sought to go beyond the facts of the dispute and attempted to intrude directly into the facts related to the government's **investigative efforts**. For instance, in Rosenfeld, the Court noted, "It would also implicate the SEC's law enforcement privilege since it might reveal the SEC's techniques and procedures and how it develops relationships with informants, and strategies for eliciting information from individuals who provide it with information." Rosenfeld, 1997 WL 576021 *3. In Grant Resources, LLC, "the FTC further argue[d] that item nos. 5, 12 and 16-24 call for testimony relating to FTC policy and procedure invoked in the process of the investigation with presaged the instant claims, all of which it submits is protected from disclosure." In contrast, Plaintiffs have no intention of inquiring into the techniques or procedures utilized by Local 430's attorneys but merely seek **all** facts relied upon by Local 430 in support of the various express allegations contained in its counterclaims.

In San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d at 1016 the First Circuit Court of Appeals explained as follows:

> To a certain extent, discovery responses can be viewed through the same glass. The civil rules illustrate this proposition by allowing litigants regularly to gain revelatory information from their opponents in certain circumstances...the rules do not compel the disclosure of matters which would likely remain in the bosom of the lodge; they merely accelerate disclosure of matters that would probably be revealed in due course. As to all materials of the latter ilk, the attorney – though he has invested his ratiocinatory capital – has a relatively low expectation of ultimate privacy; indeed, precisely the reverse is often true.

That is exactly the case here. Defendants **must** show at trial the facts on which they base their counterclaims. It is only those facts which plaintiffs seek to elicit.

C. The 30(b)(6) Of Local 430 Is Not Unreasonably Cumulative, Duplicative and Burdensome

Local 430 has **not** already provided detailed, written responses to contention interrogatories that concern a nearly identical set of issues. In fact, Local 430's responses were so evasive and incomplete that Plaintiffs were required to file a Motion to Compel More Responsive Answers to Interrogatories which is pending before this Court.

It is obvious that Local 430 refuses to identify the facts upon which it is relying solely in an effort to gain a strategic advantage whereby Plaintiffs will not have an opportunity to properly defend against the allegations in this matter. This strategy is absolutely contrary to the United State Supreme Court's ruling in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385 (1947) where the High Court ruled that mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation:

> We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. **Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.** To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. (Emphasis added).

Courts have held that contention discovery can be taken in the form of a 30(b)(6) deposition either in conjunction with contention interrogatories and/or in lieu of contention interrogatories. Arkwright Mut. Ins. Co., 1993 WL 34678 (S.D.N.Y. 1993) ("To the extent that Arkwright is seeking factual information relating to each of the claims in their litigation, use of a 30(b)(6) deposition is wholly appropriate. Arkwright need not serve contention interrogatories to discover the facts underlying National Union's legal contentions."); Security Ins. Co. of Hartford v. Trustmark Ins. Co., 218 F.R.D. 29, 34 (D.Conn. 2003) ("It is of no consequence that contention interrogatories may be the more appropriate route to obtain the information as nothing precludes a deposition either in lieu of or in conjunction with such interrogatories."); Ierardi v. Lorillard, Inc., 1991 WL 158911 *1 (Ed.Pa. 1991). Defendant argues that contention interrogatories are a simpler and more appropriate discovery method. This Court notes, however, that 'the deposition process provided a means to obtain more complete information and is therefore favored'"); and Canal Barge Co. v. Commonwealth Edison Co., 2001 WL 817853 *2 (N.D.Ill. 2001) ("The Court finds...there is both a legal and factual component to the interpretation of these contracts...Canal Barge is quite fact-specific inquiries into ComEd's position that the work performed on the barges was not maintenance are more appropriately poised in a Rule 30(b)(6) deposition rather than through contention interrogatories.")

Plaintiffs should be allowed to discover the facts underlying Local 430's allegations prior to trial by propounding contention interrogatories, noticing a 30(b)(6) deposition and/or both.

## II. CONCLUSION

Plaintiffs respectfully request that Defendants' Motion for a Protective Order be denied. Plaintiffs request an Order affirmatively compelling Local 430's 30(b)(6) designee to appear at the deposition which is scheduled for Monday, June 26, 2006 and to respond to the areas of inquiry set forth in Plaintiffs' Notice of Deposition.

North Atlantic Distribution, Inc. and
Michael Miranda
By their Attorneys

Max Wistow (#0330)

Jeffrey A. Mega (#6441)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)

Thomas J. McAndrew, Esq. (#1001)
One Turks Head Place, Ste. 205
Providence, RI 02903
(401) 455-0350 (Telephone)
(401) 455-0882 (Facsimile)

**CERTIFICATION**

I hereby certify that I hand-delivered a true copy of the within, on the 12th day of June, 2006, to the following:

Christopher H. Little, Esq.
Scott K. Pomeroy, Esq.
Little Medeiros Kinder Bulman & Whitney, PC
72 Pine Street
Providence, RI 02903

Daria C Sova

F:\Miranda, Mike (NORAD) #6523\PLEADINGS\US DISTRICT CT\Memo of Law in Support of Plfs' Obj to Defs' Motion For A Protective Order.doc