UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC. AND MICHAEL MIRANDA, Plaintiffs, | : | |
| V. | : | C.A. NO: 05-348L |
| TEAMSTERS LOCAL UNION NO. 430, TEAMSTERS LOCAL UNION NO. 776, DANIEL A. VIRTUE *in his capacity as President of Teamsters Local Union No. 776* AND JOHN L. FOGLE *in his capacity as Secretary of Teamsters Local Union No. 776,* Defendants. | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS FOR FAILURE TO COMPLY WITH DISCOVERY ORDER**

Now come plaintiffs North Atlantic Distribution, Inc. and Michael Miranda hereby seeking an order dismissing defendants Teamsters Local Union No. 430, Teamsters Local Union No. 776, Daniel A. Virtue, in his capacity as President of Teamsters Local Union No. 776 and John L. Fogle, in his capacity as Secretary of Teamsters Local Union No. 776's (hereinafter referred to collectively as "Local 430") counterclaims with prejudice for their failure to provide more responsive answers to several of Plaintiffs' Interrogatories in violation of an order entered by The Honorable Judge Martin which granted Plaintiffs' Motion To Compel Defendants to Provide More Responsive Answers to Plaintiffs' First Set of Interrogatories.

## I. FACTS

On March 2, 2006 Plaintiffs propounded Plaintiffs' First Set of Interrogatories to Local 430 and on May 4, 2006 Local 430 provided

Defendants' Response to Plaintiffs' First Set of Interrogatories. See attached Exhibits A and B. Local 430 asserted invalid objections and did not respond to and/or provided unresponsive responses to many of the interrogatories, therefore, Plaintiffs filed Plaintiffs' Motion to Compel Defendants to Provide More Responsive Answers to Plaintiffs' First Set of Interrogatories on May 19, 2006. See Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Defendants to Provide More Responsive Answers to Plaintiffs' First Set of Interrogatories which is attached hereto as Exhibit C.[1] Local 430 objected to Plaintiffs' Motion, however, following a hearing before Judge Martin on June 14, 2006, Plaintiffs' Motion to Compel More Responsive Answers to Plaintiffs' First Set of Interrogatories was granted. See the order entered by Judge Martin attached hereto as Exhibit D and hereinafter referred to as the "Order." On August 7, 2006, the last permissible day pursuant to the Order, Local 430 served Defendants' Supplemental Responses to Interrogatories upon Plaintiffs. See attached Exhibit E. Local 430's answers to the most critical interrogatories continue to be non-responsive.[2]

---

[1] Plaintiffs have omitted the motion but have attached the memorandum of law in support thereof. Plaintiffs have omitted Exhibits A and B which were attached to their Motion to Compel because the exhibits to that motion are the same as Exhibits A and B which are attached to the within motion.

[2] Plaintiffs originally propounded 17 interrogatories. In the interest of judicial efficiency, Plaintiffs' counsel did not press Plaintiffs' Motion to Compel More Responsive Answers as to interrogatories 2, 7, 8 and 9 at the June 14, 2006 hearing. The within Motion To Default concerns interrogatories 5, 15 and 17. To the extent that Local 430 takes the position that interrogatory No. 17 was not part of the June 14, 2006 hearing, Plaintiffs respectfully request an order compelling Local 430 to provide a more responsive answer to interrogatory No. 17. Plaintiffs request this relief without prejudicing their right to seek the dismissal of Local 430's counterclaims for its failure to comply with the Order's requirement that Local 430 provide more responsive answers to interrogatories 5 and 15.

Defendants in the case at bar have asserted counterclaims which seek to: (1) pierce the corporate veil; (2) impose alter ego liability against Plaintiffs; and (3) impose single employer liability against Plaintiffs. The underlying liability stems from a default judgment (which Plaintiffs in the case at bar were not parties to) obtained against a corporation[3] (which is not a party to the within action) which purportedly amounts to in excess of $2,000,000 to date. Plaintiffs' posture in the within action is purely defensive, therefore, it is **absolutely imperative that Plaintiffs know precisely which transactions that Local 430 will be relying upon in support of its claims**. Plaintiffs will reference the Interrogatories at issue in order.

## II. ARGUMENT

Rule 37(b)(2) of the Federal Rules of Civil Procedure states, "If a party...fails to obey an order to provide...discovery...the court in which the action is pending may make such orders in regard to the failure as are just..." Among the sanctions authorized is an "order striking out pleadings or parts thereof...**or dismissing the action**..." Fed. R. Civ. P. 37(b)(2)(C). (Emphasis added).

**Interrogatory No. 5**

Paragraph No. 18 of Defendants' Counterclaims contains the following allegation:

> NATCO was wrongfully rendered insolvent without regard to outstanding obligations to its employees under the CBA and that

[3] The default judgment was obtained solely against North Atlantic Transport Company of Rhode Island. Michael Miranda is the sole shareholder of North Atlantic Transport Company of Rhode Island and the defendant in the case at bar, North Atlantic Distribution, Inc.

management and other expenses properly charged to other entities were allocated to NATCO, thereby rendering it insolvent.

State all facts upon which the allegations contained in paragraph No. 18 are based, including but not limited to:

a. the date and amount of each management expense allocated to NATCO but properly charge[able] to other entities including the identity of the company/person that the expense should have been allocated to and the amount which should have been allocated to that company/person; and

b. the identity, date and amount of every other expense allocated to NATCO but properly charge[able] to other entities including the identify of the company/person that the expense should have been allocated to and the amount which should have been allocated to that company/person.

**Supplemental Response to Interrogatory No. 5**

Answering further, NATCO's financial statements and tax returns show that NATCO generated profits in 2001 substantially in excess of the amount that would have been necessary to satisfy the York labor obligations, *see, e.g.*, T 1-6, 3215-57, which were incurred in 2001. However, Michael Miranda chose not to pay these obligations. Instead, Miranda apparently on the advice of legal counsel, left NATCO as an empty shell with no assets to satisfy the eventual default judgment with respect to the York obligations. Miranda decided, with the advice of counsel, for NATCO to neither defend nor appear at the arbitration or at the district court lawsuit that Teamsters 430 brought against the company. NATCO jointly leased the trucks and other assets it used in it operations along with other Miranda entities because all of the companies would mutually benefit from the use of the leased equipment. Trucks and other equipment were sold by NATCO and the proceeds were received by NORAD. The management fees appear to have been determined and paid at each year end merely as a means of transferring money from one Miranda-owned company to another to serve Miranda's own interests. Documents that evidence intercompany allocations for expenses for 2001 include MAJ 3671-78; T 1606-07, 1904-05, 1582-1602, and 1720-25. Documents that evidence intercompany allocations for expenses in 2002 include MAJ 3679-86; and T 2015-18.

As of today, Local 430 has not provided a responsive answer in violation of the Order, which required Local 430 to comply on or before August 7, 2006.

Local 430's most recent answer still fails to identify "the date and amount of each management expense allocated to NATCO but properly chargeable to other entities including the identity of the company/person that the expense should have been allocated to and the amounts which should have been allocated to that company/person." In addition, Local 430 has completely failed to identify, the "date and amount of every other expense allocated to NATCO but properly chargeable to other entities including the identity of the company/person that the expense should have been allocated to and the amounts which should have been allocated to that company/person."

It is clearly wrong for Local 430 to continue to refer plaintiffs to documentation that has been produced in this case. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Defendants to Provide More Responsive Answers to Plaintiffs' First Set of Interrogatories, which resulted in the Order, contained a section which specifically addressed this issue entitled, "It Is Improper For Local 430 To Refer Plaintiffs To Plaintiffs' Own Business Records As Local 430's Response To Plaintiffs' Interrogatories." See Exhibit C, pp. 9-10. In fact, Plaintiffs cited <u>In re Savitt/Adler Litigation</u>, 176 F.R.D. 44,48 (N.D.N.Y. 1997), where the Court ruled, "The interrogatories seek facts, not documents or tangible objects, and the proper form of a response is a narrative answer, not a reference to documents or objects where the answers might be found." In any event, Local 430 should not be allowed to relitigate this point as Plaintiffs' Motion to Compel has already been granted.

Even more, Local 430's attempts to refer Plaintiffs to documentation is inappropriate because most of the documents contain dozens of transactions and Plaintiffs are unable to know precisely which entries Local 430 is relying upon in support of its counterclaims. For example, Local 430's most recent response to Interrogatory No. 5, it directs Plaintiffs to documents (T) 01582-1602. See attached Exhibit F. Plaintiffs do not know which of the hundreds of entries Local 430 is relying upon.

**Interrogatory No. 15**

Paragraph No. 28 of Defendants' Counterclaims contains the following allegation:

> NATCO's funds were siphoned off by Miranda and other Miranda-owned entities through excessive management fees, consulting fees, and other expenses wrongfully charged to NATCO.

State all facts upon which the allegations contained in paragraph No. 28 are based, including but not limited to:

a. the date, amount and payee of all funds that were siphoned off by Miranda and other Miranda-owned entities; and

b. the date, amount and payee of all excessive management fees, consulting fees, and other expenses wrongfully charged to NATCO.

**Supplemental Response to Interrogatory No. 15**

Answering further, Miranda also drained capital from the Miranda companies though his use of company assets to purchase or lease automobiles for his and his family members' personal use, the purchase of the yachts, personal loans that have not been repaid, and exorbitant entertainment and travel expenses. In 2001 and 2002, accounting records show numerous personal vehicles being purchased or leased by NORAD. According to Caputo, these vehicles were bought or leased for the personal use of Miranda and his immediate family, but NORAD never issued W-2's relecting the use of the vehicles as employment compensation. In 2001, leased vehicles included a Jaguar, a Toyota Tundra truck for use by Justin Miranda, a Toyota Tacoma truck for use by Lance Miranda, a Lincoln LS, a Mercedes CLK 430C, and a Chevy K2500 Suburban. *See* T 10833, 10539, 10565. These leased vehicles

were in addition to the Ford F650 and Dodge Ram 1500 trucks that NORAD purchased in 2001. *See* T 10616, 10619-23. In 2002, NORAD purchased a 2002 Cadillac Escalade, a 2002 Firebird, a 2003 Hummer, a 2003 GMC Sierra truck, and a 2003 Dodge Ram truck, while continuing to lease the Jaguar, Toyota Tundra and Tacoma trucks, and the Lincoln LS. *See* T 11215, 11210, 11253, 11231, 11412, 11454. That year NORAD also leased a 2003 Audi and a 2002 Mercedes CL50. *See* T 11231, 11412, 11454.

NORAD's purchases and leases of numerous luxury vehicles continued throughout 2003 and until the present. For example, the company's 2003 purchases include a 2003 BMW, a 2003 Escalade, a 2003 GMC Sierra, a 2004 Dodge Ram truck, a 2003 Dodge Viper, a 2004 Lincoln Navigator, a 2003 Mercedes E55, a 2004 Mercedes CLK, and some ten other vehicles. T 14187-92. In addition to these vehicles, NORAD also leased a 2002 Mercedes CL500C, a 2003 Audi A6, a "new" BMW, a Lincoln Navigator, a 2003 Lincoln Aviator, a Jaguar XK8, an Acura NSX, and other vehicles in 2003. T 11718-20.

NORAD also purchased an $850,000 luxury yacht in 2004 from the Basset Boat Company. Later that year, NORAD traded the yacht in on an even bigger one that was purchased with a $1 Million loan from Washington Trust Bank that was secured by company assets. *See, e.g.*, 13612, 13635, 13644. Expenses for the yacht were paid by NORAD, and the yacht's captain was paid a salary as an employee of NORAD.

The manner in which the shares of David Friedman were redeemed also appears to have drained assets from the Miranda companies. Specifically, the consulting fee that was part of the agreement to redeem David Friedman's shares was disproportionately charged to NATCO as an expense.

As of today, Local 430 has not provided a responsive answer in violation of the Order, which required Local 430 to comply on or before August 7, 2006. Local 430 has failed to identify "the date, amount and payee of all funds that were siphoned off by Miranda and other Miranda-owned entities." In addition, Local 430 has failed to identify "the date, amount and payee of all excessive management fees, consulting fees, and other expenses wrongfully charged to NATCO." Plaintiffs rely upon the same argument which follows Interrogatory No, 5 in pages 4-6, <u>supra</u>, in support of their position that Local 430's counterclaims should be dismissed with prejudice.

**Interrogatory No. 17**

With regard to the time(s), if any, that Local 430 or its agents or employees advised NORAD and/or Miranda that Local 430 was pursuing Miranda and/or NORAD to satisfy the financial responsibilities of NATCO including but not limited to the Judgment entered in C.A. 02-1461 in the United States District Court for the Middle District of Pennsylvania, identify:

a. the date of the communication;
b. the substance of the communication; and
c. the parties to said communication.

**Supplemental Response to Interrogatory No. 17**

Answering further, Miranda testified at deposition that he became personally aware of the grievances near the time NATCO ceased operations in York, and that he discussed the matter with Aldo Caputo and legal counsel. Caputo informed Miranda that NATCO owed the money, but Miranda, on the advice of counsel, decided not to pay the obligation. Miranda was personally aware of the demand for arbitration, having learned of it from Caputo or counsel. On the advice of counsel, Miranda decided not to have NATCO defend or appear at the arbitration. Miranda was personally aware of the district court lawsuit in Pennsylvania, having learned of it from Caputo or counsel. On the advice of counsel, Miranda decided not to have NATCO defend or appear in that action.

On June 9, 2005, Mr. Little sent correspondence to Plaintiffs' prior attorneys which is clearly responsive to this interrogatory but which is not referenced at all in Local 430's answer. See attached Exhibit G.

## III. CONCLUSION

Plaintiffs respectfully request that this Court dismiss Defendant Local 430's counterclaims with prejudice for its failure to comply with the June 16, 2006 Order of Judge Martin which granted Plaintiffs' Motion to Compel More Responsive Answers to Plaintiffs' First Set of Interrogatories.

Plaintiffs,
North Atlantic Distribution, Inc. and
Michael Miranda
By their Attorneys

/s/Max Wistow

Max Wistow (#0330)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)
mw@wistbar.com

/s/ Jeffrey A. Mega

Jeffrey A. Mega (#6441)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)
jam@wistbar.com

/s/ Thomas J. McAndrew

Thomas J. McAndrew, Esq. (#1001)
One Turks Head Place, Ste. 205
Providence, RI 02903
(401) 455-0350 (Telephone)
(401) 455-0882 (Facsimile)

DATED: August 17, 2006

**CERTIFICATION**

I hereby certify that I caused to be served by electronic means (ECF) a copy of the within on the 17th day of August, 2006, to the following:

Christopher H. Little, Esq.
clittle@lmkbw.com

/s/Max Wistow
Max Wistow (#0330)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)
mw@wistbar.com