# EXHIBIT B
# Pgs. 1-12

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC.; and MICHAEL MIRANDA,<br><br>Plaintiffs,<br><br>v.<br><br>TEAMSTERS LOCAL UNION NO. 430; TEAMSTERS LOCAL UNION NO. 776; DANIEL A. VIRTUE, in his Capacity as President of Teamsters Local Union No. 776; and JOHN L. FOGLE, in his Capacity as Secretary of Teamsters Local Union No. 776,<br><br>Defendants. | ) | C.A. No. 05-348 L |

**DEFENDANTS' RESPONSE TO**
**PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Defendants Teamsters Local Union No. 430, Teamsters Local Union No. 776, Daniel A. Virtue, and John L. Fogle ("Defendants") hereby respond to the First Set of Interrogatories propounded by Plaintiffs North Atlantic Distribution, Inc. ("NORAD") and Michael Miranda ("Miranda").

**General Objections**

Defendants object to this set of interrogatories to the extent that the "Definitions and Instructions" and other instructions and directions contained therein seek to impose obligations beyond those required by the Federal Rules of Civil Procedure.

Defendants object that through the improper use of multiple parts and subparts, Plaintiffs have exceeded the maximum number of interrogatories allowed under the Federal Rules of Civil Procedure.

Defendants object to this set of interrogatories to the extent that any interrogatory seeks any trial preparation materials or any information or documents protected by the attorney-client privilege or the work product doctrine. To the extent any interrogatory requests that Defendants specifically identify which evidence will be offered to establish a particular fact or factual allegation, Defendants object on the grounds that such information is protected by the attorney work product doctrine.

Defendants also object to this set of interrogatories to the extent that any interrogatory seeks "all facts" that support any particular contention or allegation made in the pleadings. Much of the relevant information necessary to answer such interrogatories fully is in the possession of Plaintiffs or of North Atlantic Transport Co. of Rhode Island ("NATCO") but is not in the possession of Defendants. Defendants' efforts to uncover such facts through their own discovery of Plaintiffs and NATCO (collectively the "Miranda Entities") is ongoing, as are Defendants' efforts to analyze and evaluate the documents and materials already produced by Plaintiffs and others. As such, Defendants' responses to Plaintiffs' contention interrogatories seeking "all facts" will necessarily be incomplete at this stage of the litigation. In accordance with the Federal Rules of Civil Procedure, Defendants will supplement their responses as necessary.

The foregoing general objections are deemed to be incorporated and made a part of each of the following individual responses.

**Interrogatories**

**Interrogatory No. 1**

State all facts upon which you base your contention that, "NATCO, NORAD and Miranda constitute a single employer for the purposes of the CBA here at issue," as set forth in paragraph No. 13 of Defendants' Counterclaims.

**Response to Interrogatory No. 1**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that the Miranda Entities constitute a single employer for purposes of the CBA are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that: a) the operations of the Miranda entities were thoroughly integrated and interrelated such that the various companies all operated on a day-to-day basis as a single business; b) the Miranda Entities shared common management and supervisory personnel; c) the common management and supervisory personnel exercised centralized control over critical business decisions for both NORAD and NATCO, including policy-level matters concerning labor relations; and d) both NORAD and NATCO were wholly owned by Michael Miranda.

For example, NATCO had employees, such as drivers and yard workers, that were located in York, Pennsylvania, but NATCO and other Miranda affiliated companies used NORAD's management team located at 100 Tidal Drive, North Kingstown, Rhode Island to run the day-to-day management aspects of all companies. The North Kingstown address was the business address for all of the Miranda Entities. NORAD paid office expenses, executive salaries, and employee benefits that were partially allocated to NATCO each month. *See* MAJ 3139–508; MAJ 3665–86; T 1–9091; T 9724–15324; T 16020–508; Confidential 1–3607. Michael Miranda was the sole shareholder of both NORAD and NATCO. Miranda and Aldo Caputo were corporate officers of both NORAD and NATCO. Together, Miranda and Caputo made the relevant executive-level decisions and exerted control over the management and labor

relations of both companies. *See* MAJ 3139–3-633; T 19–9091; T9724–15038; T 16020–508; Confidential 1–3607.

Answering further, Defendants refer to and incorporate herein their Responses to Interrogatories 2 and 3.

Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery proceeds.

**Interrogatory No. 2**

Paragraph No. 14 of Defendants' Counterclaims contains the following allegation:

> The operations of NATCO, NORAD and Miranda were completely integrated. Business expenses, physical plant, customer relationships, equipment leases, and liability for corporate financing were all shared among the various entities.

State all facts upon which the allegations contained in paragraph No. 14 are based, including but not limited to:

a. the date, nature and amount of each shared business expense and the identity of the parties that shared each expense;

b. the date(s) and identities of parties that shared physical plant(s) as well as the address(es) of the shared plant(s);

c. the identity of shared customers, the identity of individuals/companies that shared customers and the time period(s) that the customers were shared;

d. the identity of the parties that were sharing customers, the time period that said customers were shared and whether or not the parties had written contracts with the shared customers;

e. the parties, date(s) and nature of each shared equipment lease; and,

f. the parties, date(s) and nature of each agreement which called for shared liability of corporate financing.

**Response to Interrogatory No. 2**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that the operations of the Miranda Entities were completely integrated and are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that insurance premiums were combined for both NORAD and NATCO (and other Miranda-affiliated companies) and allocated between them. For example the Doorley Agency billed NORAD for multiple insurance policies, including workers compensation in Pennsylvania, even though NORAD's workforce was entirely in Rhode Island—only NATCO and other Miranda affiliated companies (other than NORAD itself) had employees in Pennsylvania. Though billed to and paid by only one company, such insurance expenses were internally allocated between the various Miranda Entities. *See*, *e.g.*, T 10205–06, 10465–67, 10499–526, and 11176–77.

Likewise, expenses for trucking supplies, truck and trailer upkeep and maintenance, diesel fuel, transportation claims, health insurance, dental insurance, employee life-disability insurance, shop utilities, classified ads, legal fees, consulting and professional services, telephone, freight, office expenses, outside services, and interest were paid by NORAD and then allocated to NATCO for internal accounting purposes. *See* MAJ 3074–113; T 413–5224; T 9724–15038; Confidential 1769–3607. Other expenses, such as office supplies, were invoiced to a single company but paid via separate checks by several companies. For example, Office Max's invoices would be sent to NATCO but would include charges for NORAD or other Miranda-affiliated companies as well. The invoices would then be paid with multiple checks from the respective companies. *See*, *e.g.*, Confidential 2732 and 2756.

Answering further, the extent of shared business expenses and the nature, date, and amount of each such shared expense can be determined from Plaintiffs' own business and accounting records, and pursuant to Rule 33(d), Defendants direct Plaintiffs to those records.

The shared physical plant includes the shared office located at 100 Tidal Drive, North Kingstown, Rhode Island. The shared customers of the Miranda Entities included Subaru, Volkswagen, and Isuzu. Chrysler was a shared customer of NORAD and Mid Atlantic Processing, Inc. ("MAP"), a Miranda-affiliated company. In addition, there were inter-company sales between NATCO, NORAD, and other Miranda-affiliated companies. *See* MAJ 3074–508, MAJ 3634–86; T 1–18; T 413–5224; T 9724–15038; T 16020–508; Confidential 1769–3387. Defendants are continuing their discovery of Plaintiffs with respect to Plaintiffs' shared customers and the various contracts and related correspondence between Plaintiffs and their shared customers.

Substantially all of the equipment used by NATCO in its business was leased, and nearly all of these leases were co-signed by NORAD and/or Miranda. Likewise, financing for NATCO, such as that obtained from Citizens Bank, was signed by NORAD, NATCO, Miranda personally, as well as by other Miranda-affiliated companies. *See* T 9724–15038; T 16020–508; Confidential 122–1768.

Answering further, more specific answers and examples can be adduced from Plaintiffs' own business records, and pursuant to Rule 33(d), Defendants direct Plaintiffs to those records. Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery continues.

**Interrogatory No. 3**

Paragraph No. 16 of Defendants' Counterclaims contains the following allegation:

> Miranda exercised centralized control over all operations of NATCO and NORAD, including but not limited to control of labor relations.

State all facts upon which the allegations contained in paragraph No. 16 are based, including but not limited to the identity of all operations that Miranda exercised centralized control over and the time period that such control was exercised.

**Response to Interrogatory No. 3**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that Miranda exercised centralized control over NATCO's and NORAD's operations are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that Michael Miranda was the sole shareholder and the president of both NATCO and NORAD. As such, he was the final decision maker with respect to all operational, financial, managerial, and labor matters at both companies. *See* MAJ 3114–633; T 19–181; T9724–15038; T 16020–508; Confidential 1–1768.

Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery proceeds.

**Interrogatory No. 4**

State all facts upon which you base your contention that "under the federal labor law, Miranda, NATCO, and NORAD are all alter egos of one another for purposes of the CBA and arbitration award here at issue," as set forth in Paragraph No. 17 of Defendants' Counterclaims.

**Response to Interrogatory No. 4**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that the Miranda Entities are alter egos of one another under federal

labor law are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that the Miranda Entities have common management and ownership. The Miranda Entities were operated with a common business purpose as if they constituted a single continuing enterprise. They used common premises and equipment to serve common customers within the same geographic market. Moreover, the nature of the dealings and transactions between the various Miranda Entities (and other Miranda-affiliated companies) were less than arms-length. The same owner and management were on both sides of the inter-company transactions, such as the exchange of so-called "management fees" between the companies. Moreover, the timing of NATCO's cessation of operations indicates that a purpose of the transaction was to evade NATCO's labor law responsibilities. *See* MAJ 3074–686; T 1–181; T 413–5224; T 9724–15038; T 15039–298; T 16020–1649; Confidential 1–3607.

Answering further, Defendants refer to and incorporate herein their Responses to Interrogatories 5–11.

Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery proceeds.

**Interrogatory No. 5**

Paragraph No. 18 of Defendants' Counterclaims contains the following allegation:

> NATCO was wrongfully rendered insolvent without regard to outstanding obligations to its employees under the CBA and that management and other expenses properly charged to other entities were allocated to NATCO, thereby rendering it insolvent.

State all facts upon which the allegations contained in paragraph No. 18 are based, including but not limited to:

a. the date and amount of each management expense allocated to NATCO but properly charge[able] to other entities including the identity of the company/person that the expense should have been allocated to and the amount which should have been allocated to that company/person; and

b. the identity, date and amount of every other expense allocated to NATCO but properly charge[able] to other entities including the identity of the company/person that the expense should have been allocated to and the amount which should have been allocated to that company/person.

**Response to Interrogatory No. 5**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that management and other expenses were improperly allocated to NATCO are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that NATCO's business operations abruptly ceased, with no apparent reason, after being a profitable enterprise in three of the four prior years. Thereafter, NORAD continued in business, serving the same market as NATCO had. NATCO failed to pay obligations due under the CBA, and through inter-company transactions with other companies that he controlled, Miranda emptied NATCO of any assets which might have been used to satisfy the unpaid CBA obligations. *See* MAJ 3074–138; MAJ 3288–508; MAJ 3634–86; T 1–18; T 413–5224; T 9724–15038; T 16020–508 Confidential 122–3607.

The various Miranda Entities booked substantial amounts for so-called "management fees" that were either payable or receivable between the Miranda-controlled companies. In discovery, Defendants have sought documents and information explaining the purposes of such management fees and how the various companies' expense allocations for these management fees were made, but Plaintiffs have not provided this information. *See* MAJ 3074–138; MAJ

3288–508; MAJ 3634–86; T 1–18; T 413–5224; T 9724–15038; T 16020–508 Confidential 1769–3607.

Details regarding the dates and amounts of management fees and other expenses referenced in Paragraph 18 of the Counterclaim can be determined from the general ledgers and other accounting and business records of the Plaintiffs themselves. Pursuant to Rule 33(d), Defendants direct Plaintiffs to those accounting and business records.

Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery continues.

**Interrogatory No. 6**

State all facts upon which you base your contention that "NATCO and NORAD have identical management" as set forth in paragraph No. 19 of Defendants' Counterclaims including but not limited to the following:

a. the name and title of each individual and/or company who/which constitutes identical management; and

b. the time period that each individual and/ or company managed both NATCO and NORAD.

**Response to Interrogatory No. 6**

Subject to and without waiving the foregoing general objections, Defendants state that Michael Miranda and Caputo were officers of both NATCO and NORAD, and they were the individuals who were in charge of management decisions for both NATCO and NORAD. Justin, Lance, and Keith Miranda also had certain positions and responsibilities within both companies. Their specific titles and the identity of other individuals employed to perform management or supervisory functions for the Miranda Entities can be determined from the Plaintiffs' own business records, and pursuant to Rule 33(d), Defendants direct Plaintiffs to these business

records. *See* MAJ 3139–686; T 1–181; 413–9091; T 9724–15038; T 16020–508; Confidential 1–3607. Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery continues.

**Interrogatory No. 7**

Paragraph No. 20 of Defendants' Counterclaims contains the following allegation: "NATCO and NORAD have substantially identical business purposes. Both entities prepare, distribute, or transport automobiles." State all facts upon which the allegations contained in paragraph No. 20 are based, including but not limited to the following:

a. the identity of the parties for which NORAD distributed and/or transported automobiles;

b. the dates that NORAD distributed and/or transported automobiles including the point of origin and destination location and the company that received the automobiles; and

c. the identity of the parties for which NATCO prepared automobiles.

**Response to Interrogatory No. 7**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that NATCO and NORAD have substantially identical business purposes are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that NATCO and NORAD (along with other Miranda-affiliated companies) operated as a single business operation to accept deliveries of automobiles, off-load the automobiles from rail or ship, then prepare them, install accessories, and wash them, prior to distributing and transporting the automobiles to the various dealerships throughout the Northeastern United States for sale to customers. In conjunction with other Miranda-affiliated companies, such as MAP, the Miranda Entities performed these services for a common set of

shared customers including Subaru, Volkswagen, Isuzu, and Chrysler. In some cases, different companies would perform separate tasks, such as the off-loading, prepping, storing, or transporting of the automobiles, but all of the companies operated as a single integrated business. *See* MAJ 3074–138; MAJ 3288–686; T 1–18; T 96–125; T 145–81; T 413–9091; T 9724–15038; T 16020–508; Confidential 1–3607. As described in the Responses to Interrogatories 2, 3, 5, and 6, above, the Miranda Entities shared and allocated expenses between them, shared leases and financing, had common management, had common facilities and equipment, and had identical ownership interests.

Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery proceeds.

**Interrogatory No. 8**

Paragraph No. 21 of Defendants' Counterclaims contains the following allegation:

> NATCO and NORAD have substantially identical operations. Both entities have the same address and were managed by the same staff from the same offices. Expenses such as payroll, trucking supplies, truck maintenance, diesel fuel, health insurance, dental insurance, shop supplies, classified ads, legal fees, consulting and professional services, telephone bills, freight costs, and office expenses were at all relevant times paid jointly by all employer entities without regard to which nominally separate entity actually incurred the expense.

State all facts upon which the allegations contained in paragraph No. 21 are based, including but not limited to:

a. the dates and locations of business addresses that were shared by NATCO and NORAD;

b. the relevant dates and identity of the individuals and departments that simultaneously managed NATCO and NORAD; and

c. the identity, date and amount of each expense including but not limited to payroll, trucking supplies, truck maintenance, diesel fuel, health insurance, dental