# EXHIBIT B
# Pgs. 13-27

> insurance, shop supplies, classified ads, legal fees, consulting and professional services, telephone bills, freight costs, and office expenses that were paid jointly by all employer entities without regard to which nominally separate entity actually incurred the expense.

**Response to Interrogatory No. 8**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that NATCO and NORAD have substantially identical operations are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that NATCO and NORAD shared the business address of 100 Tidal Drive, North Kingstown, Rhode Island. Common management and employees included Aldo Caputo, Michael Miranda, Justin Miranda, Lance Miranda, Keith Miranda, James Gasper, Stu Tully, and John Huber.

As to examples of shared expenses, Defendants refer to, and incorporate herein, their Response to Interrogatory 2. Answering further, the details regarding the specific nature, amounts, and dates of individual expenses shared or allocated among the Miranda Entities can be adduced from Plaintiffs' own accounting and business records. *See* MAJ 3114–686; T 1–181; T 413–9191; T9724–15038; T 16020–508; Confidential 1–3607. Pursuant to Rule 33(d), Defendants refer Plaintiffs to those records. Defendant's review of the accounting and business records so far produced by the Plaintiffs is ongoing, and Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery continues.

**Interrogatory No. 9**

Paragraph No. 22 of Defendants' Counterclaims contains the following allegation:

> NATCO and NORAD share substantially identical equipment. In addition to using the same office space and office equipment, NATCO and NORAD have shared expenses for other equipment. Lease agreements for equipment establish that NATCO and NORAD, among other Miranda-owned entities, jointly entered into lease obligations and shared liability for leased heavy equipment, regardless of which nominally different entity actually used the equipment.

State all facts upon which the allegations contained in paragraph No. 22 are based, including but not limited to:

a. the identity and date(s) of all equipment shared by NATCO and NORAD;

b. the identity, date and amount of each expense that NATCO and NORAD shared for equipment; and

c. the identity of all lease agreements for equipment which were jointly entered into by NATCO and NORAD and/or other Miranda-owned entities including but not limited to the date of each such agreement.

**Response to Interrogatory No. 9**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that NATCO and NORAD share substantially identical equipment are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that as the Miranda Entities shared their management and had a shared business office in North Kingstown, Rhode Island, their office equipment at that location was shared by the companies. In addition, there were corporate vehicles that were used by the individuals who had managerial and supervisory functions at NATCO and NORAD. These corporate vehicles were thus used for the business of both companies. NATCO's equipment leases were signed by NORAD and/or Miranda individually; thus it also appears that trucking and other equipment were also shared. Moreover, it appears that at least some part of NATCO's equipment was sold to NORAD, or the leases assumed by NORAD, in conjunction with NATCO's closing its

operations. *See* MAJ 3074–686; T 1–18; T 413–5224; T 9724–15038; T16020–508; Confidential 1–3607.

Answering further, details regarding the specific leases can be adduced from the leases themselves. Pursuant to Rule 33(d), Defendants refer Plaintiffs to the leases and Plaintiffs' own business records with respect to such matters. Defendants' review of the leases and related documents so far produced by Plaintiffs is still ongoing. Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of such information proceeds.

**Interrogatory No. 10**

Paragraph No. 23 of Defendants' Counterclaims contains the following allegation:

> NATCO and NORAD shared substantially identical customers. The vast majority of NATCO and NORAD's income came from the shared customers Volkswagen and Subaru. Additionally, substantial NATCO revenue came directly from NORAD and other Miranda-owned entities.

State all facts upon which the allegations contained in paragraph No. 23 are based, including but not limited to:

a. the amount of annual income that NATCO received from Volkswagen for the years upon which defendants rely;

b. the amount of annual income that NORAD received from Volkswagen for the years upon which defendants rely;

c. the amount of annual income that NATCO received from Subaru for the years upon which defendants rely;

d. the amount of annual income that NORAD received from Subaru for the years upon which defendants rely; and

e. with regard to NATCO revenue which came directly from NORAD and other Miranda-owned entities, identify the individual/ company that made such payment(s), the dates of the payments and the amount of the payments.

**Response to Interrogatory No. 10**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that NATCO and NORAD shared substantially identical customers and especially the knowledge of the amounts of NATCO's and NORAD's annual income are within the control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that the Miranda Entities shared such customers as Subaru, Volkswagen, and Isuzu. Chrysler was a shared customer of NORAD and MAP. Defendants incorporate herein their Response to Interrogatories 2 and 7. *See* MAJ 3074–138; MAJ 3288–686; T 1–181; T 413–5224; T 9724–15038; T 16020–508; Confidential 1–3607.

Although Defendants' review of NATCO's and NORAD's accounting and financial records (to the extent such materials have so far been produced) is still ongoing, it appears that NATCO's revenues from Volkswagen exceeded $522,000 in 2001 and exceeded $40,000 in 2002. NORAD's revenues from Volkswagen appear to have exceed $460,000 in 2001; $2.1 Million in 2002; $9.3 Million in 2003; and $8.5 Million in 2004. NATCO's revenues from Subaru appear to have exceed $1.5 Million in 1999; $1.9 Million in 2000; and $1.7 Million in 2001. NORAD's revenues from Subaru appear to have exceed $3.0 Million in 1999; $2.5 Million in 2000; $2.0 Million in 2001; $1.3 Million in 2002; $1.2 Million in 2003; and $1.5 Million in 2004. NATCO also appears to have received revenue from NORAD in amounts which exceed $623,000 in 1999; $823,000 in 2000; $581,000 in 2001; and $69,000 in 2002. In addition, substantial funds were paid between NATCO, NORAD, and other Mirada-affiliated companies in the form of so-called management fees and allocated expenses. NATCO also received revenue from "sales" to other Miranda-affiliated companies during this time. For

example, NATCO appears to have received more that $1.0 Million in revenues from MAP during the years 1999 to 2001. *See* MAJ 3074–138; MAJ 3634–65; T 1–18; T 413–5224; T 98724–15038; T 16020–508; Confidential 1769–3387; Confidential 3411–607.

Answering further, Defendants refer Plaintiffs to their own financial and business records pursuant to Rule 33(d). Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of Plaintiffs' financial information obtained in discovery continues.

**Interrogatory No. 11**

State all facts upon which you base your contention that "NATCO and NORAD share identical supervision" as stated in paragraph No. 24 of Defendants' Counterclaims, including but not limited to the individual(s) who performed said supervision and the subject matter that each individual supervised.

**Response to Interrogatory No. 11**

Subject to and without waiving the foregoing general objections, Defendants state that Michael Miranda and Aldo Caputo were officers of both NATCO and NORAD, and they were the individuals who were in charge of supervisory functions for both NATCO and NORAD. Justin, Lance, and Keith Miranda also had certain positions and responsibilities within both companies. Their specific titles and the identity of other individuals employed to perform management or supervisory functions for the Miranda Entities can be determined from the Plaintiffs' own business records, and pursuant to Rule 33(d), Defendants direct Plaintiffs to these business records. *See* MAJ 3114–38; MAJ 3288–633; T 19–181; T 9724–15038; T 16020–508; Confidential 1–3410. Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery continues.

**Interrogatory No. 12**

State all facts upon which you base your contention that "Miranda is also an alter ego of NATCO as that doctrine has developed under corporate law" as stated in paragraph No. 25 of Defendants' Counterclaims.

**Response to Interrogatory No. 12**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contention that the Miranda Entities are alter egos of one another under corporate law doctrines are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that the Miranda Entities displayed a unity of interest and a unity of stock ownership. NATCO was emptied of its assets and left without any means to satisfy its obligations under the CBA. The Miranda Entities had common management and officers and were operated with a common business purpose. They used common premises and equipment to serve common customers within the same geographic market. The Miranda Entities were also financially dependent upon one another; each relied upon the business and contracts of the others, and none were truly independent of the others. Miranda, as the common owner and a common officer of both NATCO and NORAD, dominated and controlled the respective companies finances, policies and practices. The nature of the dealings and transactions between the various Miranda Entities (and other Miranda-affiliated companies) were less than arms-length. The same owner and management were on both sides of the inter-company transactions, such as the exchange of so-called "management fees" between the companies and the allocations of payroll and employee benefits. The manner in which leases, equipment, and expenses were shared between the companies is also indicative of their interdependence and a lack of adherence to corporate formalities. Moreover, the timing of

NATCO's cessation of operations indicates that a purpose of the transaction was to evade obligations to NATCO's creditors, particularly to Defendants. *See* MAJ 3474–3686; T 1–181; T 9724–15038; T 16020–16508; Confidential 1–3607.

Answering further, Defendants refer to and incorporate herein their responses to Interrogatories 13–15, below. Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery proceeds.

**Interrogatory No. 13**

State all facts upon which you base your contention that, "Miranda controlled the operation of NATCO" as stated in paragraph No. 26 of Defendants' Counterclaims.

**Response to Interrogatory No. 13**

In addition to the foregoing general objections, Defendants object that this interrogatory is unreasonably duplicative. Subject to and without waiving these objections, Defendants refer Plaintiffs to Defendants' Response to Interrogatory 3 above, and incorporate that response, including its objections, into this response.

**Interrogatory No. 14**

Paragraph No. 27 of Defendants' Counterclaims contains the following allegation:

> NATCO was at all relevant times insufficiently capitalized for the business purpose it undertook, not least paying the wages of its employees. NATCO operated on capital provided by Miranda or other Miranda-owned entities, or capital provided by loans secured by other entities, including NORAD. NATCO did not pay corporate dividends or observe other corporate formalities.

State all facts upon which the allegations contained in paragraph No. 27 are based, including but not limited to:

a. the identity of all corporate formalities that NATCO did not observe; and

b. the date and amount of all capital that NATCO operated on which was provided by Miranda or other Miranda-owned entities.

**Response to Interrogatory No. 14**

In addition to the forgoing general objections, Defendants object that many of the facts that support the contentions that NATCO was insufficiently capitalized and failed to obey corporate formalities are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that corporate formalities that the Miranda Entities failed to observe included their commingling of assets and equipment, their sharing of expenses, their less-than-arm's-length transactions including inter-company "sales," and charging of so-called management fees, allocations of payroll and employee benefits, and so forth.

The amounts of capital provided by Miranda and other Miranda-owned entities as well as the dates such amounts were provided can be adduced from the financial statements and accounting records of the companies. *See* MAJ 3074–287; MAJ 3634–86; T 1–9091; T 9724–15038; T 16020–508; Confidential 1769–3607. Defendants' review of such materials is ongoing. Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery proceeds.

**Interrogatory No. 15**

Paragraph No. 28 of Defendants' Counterclaims contains the following allegation:

> NATCO's funds were siphoned off by Miranda and other Miranda-owned entities through excessive management fees, consulting fees, and other expenses wrongfully charged to NATCO.

State all facts upon which the allegations contained in paragraph No. 28 are based, including but not limited to:

a. the date, amount and payee of all funds that were siphoned off by Miranda and other Miranda-owned entities; and

b. the date, amount and payee of all excessive management fees, consulting fees, and other expenses wrongfully charged to NATCO.

**Response to Interrogatory No. 15**

In addition to the forgoing general objections, Defendants object that the details concerning the siphoning of funds and the payment of management and consulting fees and other expenses are within the knowledge and control of the Miranda Entities, and Defendants' efforts to uncover these facts through discovery is ongoing. Subject to and without waiving these objections, Defendants state that through inter-company "sales," charging of management fees, and allocations of expense between the various companies, Miranda effectively moved income and cash from NATCO to NORAD and/or other Miranda-affiliated companies for his own benefit. The precise dates and amounts of such transfers are reflected in the general ledger and accounting records of the respective companies. Plaintiffs have not produced all of the relevant accounting records for all of the Miranda-affiliated companies, and Defendant's review of the documents that have been produced so far is ongoing. *See* MAJ 3074–287; MAJ 3634–86; T 1–9091; T 9724–15038; T 16020–16508; Confidential 1–3607.

Pursuant to Rule 33(d), Defendants refer Plaintiffs to their own accounting and business records. Defendants will supplement this response to the extent required by the Federal Rules of Civil Procedure as Defendants' discovery efforts and Defendants' analysis of the information obtained in discovery proceeds.

**Interrogatory No. 16**

Identify each person whom you intend to call as an expert witness, stating:

a. His/her name, or other means of identification, address and telephone number;

b. His/her profession or occupation, and the field in which he/ she allegedly is an expert;

c. If he/ she has had a formal education in his field and, if so, state:

   i. The name and address of each school where he / she received special education or training in this field;

   ii. The dates when he/she attended each school;

   iii. The name and description of each degree he / she received, including the date when each was received, and the name of the school from which each was received; and

   iv. The title, publisher and date of publication of any books, papers, articles, publications on subjects in his/her field that he / she has written within the preceding ten years.

d. Whether he/she is self-employed, employed by someone else or associated as a partner;

e. Each address where he/she practiced or was employed;

f. The dates he/she was with each employer, if any;

g. The type of duty they performed with each employer;

h. The subject matter on which he/she is expected to testify;

i. The substance of the facts on which he/she is expected to testify;

j. The substance of the opinions and/or conclusions to which each expert is expected to testify and give a summary of the grounds upon which each expert bases his/her opinion;

k. The identity of all such cases in which he/she testified during the last four (4) years, including the name of each case, the court, and docket number of each case, the names of the attorneys representing the principal parties in each case, and the date(s) of such testimony;

l. The amount of compensation to be paid for his/her work and efforts in connection with this action; and

m. A description and date of each written report prepared by him/her.

**Response to Interrogatory No. 16**

In addition to the forgoing general objections, Defendants object to this interrogatory on to the extent that it seeks disclosure of trial preparation material or information that is protected by the attorney client privilege or attorney work product. Subject to and without waving these objections, Defendants have not determined who they will call as an expert witness in this case. Defendants will supplement this response in accordance with the Federal Rules of Civil Procedure.

**Interrogatory No. 17**

With regard to the time(s), if any, that Local 430 or its agents or employees advised NORAD and/or Miranda that Local 430 was pursuing Miranda and/or NORAD to satisfy the financial responsibilities of NATCO including but not limited to the Judgment entered in C.A. 02-1461 in the United States District Court for the Middle District of Pennsylvania, identify:

a. the date of the communication;

b. the substance of the communication; and

c. the parties to said communication.

**Response to Interrogatory No. 17**

Subject to and without waiving the foregoing objections, Defendants state that as NATCO, NORAD, and Michael Miranda constitute a single employer and alter egos of one another, all were put on notice that each would be liable for the financial responsibilities of NATCO's breach of the CBA beginning at the time the CBA was signed. As a single employer and alter egos of one another, all Plaintiffs were on notice of their liability for NATCO's obligations at the time NATCO ceased its York, Pennsylvania operations and failed to make payments required under the CBA. Plaintiffs were put on notice when Teamsters 430 informed NATCO of the various grievances filed against NATCO between July 12 and November 9, 2001.

Plaintiffs were put on notice when Teamsters 430 wrote to Miranda on November 30, 2001, requesting that NATCO pay the monies owed under the CBA.

As a single employer and alter egos, Plaintiffs were put on notice when they received and ignored Teamster 430's demand for arbitration. Plaintiffs were put on notice when they were informed of the May 22, 2003 arbitration decision.

As a single employer and alter egos, Plaintiffs were again put on notice when counsel for Teamsters 430 filed suit against NATCO in the United States District Court for the Middle District of Pennsylvania (the "Pennsylvania action"). On August 21, 2002, counsel for Teamsters 430 mailed a complaint in the Pennsylvania action, a notice of lawsuit, and a waiver of service to NATCO in accordance with the Federal Rules of Civil Procedure, but NATCO and the Miranda Entities failed to respond. On December 4, 2002, Plaintiffs were put on notice when Teamsters 430 personally served a summons and complaint in the Pennsylvania action upon Keith Miranda at 100 Tidal Drive, North Kingstown, Rhode Island. NATCO and the Miranda Entities failed to answer the complaint. Plaintiffs were put on notice when NATCO received notice of the February 27, 2003 entry of default in the Pennsylvania action. Plaintiffs were put on notice when NATCO received notice of the February 28, 2003 default judgment in the Pennsylvania action.

As a single employer and alter egos, Plaintiffs were put on notice when Aldo Caputo and Gary Pannone were personally served with a writ of execution on the Pennsylvania default judgment. Caputo and Pannone were personally served on January 21, 2005. Plaintiffs were put on notice by subpoenas and discovery requests Teamsters 430 issued in connection with the case captioned Teamsters Local Union No. 430 v. North Atlantic Transport Co. of Rhode Island, United States District Court for the District of Rhode Island, Civil Action 05-006 L.

Plaintiffs were put on notice by the counterclaims asserted by Defendants in this action as well. In addition to the foregoing communications, there have been various additional communications between counsel at various times relating to Defendants' efforts to recover on the Pennsylvania default judgment.

Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

As to Answers,

Kevin M. Cicak
Kevin M. Cicak
Business Agent
Teamsters Local Union No. 776

STATE OF Pennsylvania
COUNTY OF Cumberland

Subscribed and sworn to before me this 2 day of May, 2006.

Kim S. Lowe
Notary Public
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kim S. Lowe, Notary Public
North Middleton Twp., Cumberland County
My Commission Expires Sept. 20, 2008
Member, Pennsylvania Association Of Notaries

As to Objections,

TEAMSTERS LOCAL UNION NO. 430;
TEAMSTERS LOCAL UNION NO. 776;
DANIEL A. VIRTUE, in his Capacity as
President of Teamsters Local Union No. 776;
and JOHN L. FOGLE, in his Capacity as
Secretary of Teamsters Local Union No. 776,

By their Attorneys,

Christopher H. Little (#1789)
Scott K. Pomeroy (#6044)
LITTLE MEDEIROS KINDER BULMAN &
WHITNEY, P.C.
72 Pine Street
Providence, RI 02903

Tel: (401) 272-8080
Fax: (401) 521-3555

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4th, 2006, I caused to be served by first class mail, postage prepaid, a true copy of the within Response to Plaintiffs' First Set of Interrogatories to each of the following:

Max Wistow, Esq.
Jeffrey A. Mega, Esq.
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903

Thomas J. McAndrew, Esq.
One Turks Head Place, Suite 205
Providence, RI 02903

Marcia J. [signature]

scott/A114/1338