# EXHIBIT C

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC. AND MICHAEL MIRANDA, Plaintiffs, | : | |
| V. | : | C.A. NO: 05-348L |
| TEAMSTERS LOCAL UNION NO. 430, TEAMSTERS LOCAL UNION NO. 776, DANIEL A. VIRTUE *in his capacity as President of Teamsters Local Union No. 776* AND JOHN L. FOGLE *in his capacity as Secretary of Teamsters Local Union No. 776,* Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PROVIDE MORE RESPONSIVE ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Plaintiffs North Atlantic Distribution, Inc. ("NORAD") and Michael Miranda ("Miranda") respectfully request an Order compelling Defendants Teamsters Local Union No. 430, Teamsters Local Union No. 776, Daniel A. Virtue in his capacity as President of Teamsters Local Union No. 776 and John L. Fogle in his capacity as Secretary of Teamsters Local Union No. 776 (collectively, "Local 430") to provide more responsive answers to Plaintiffs' First Set of Interrogatories to Local 430.

## I. FACTS

On March 2, 2006, Plaintiffs propounded Plaintiffs' First Set of Interrogatories to Local 430 which contained seventeen interrogatories. See attached "Exhibit A." On or about May 4, 2006, Plaintiffs received Defendants'

Response to Plaintiffs' First Set of Interrogatories. See attached "Exhibit B." Local 430's answers contained a general objection which states, "Defendants object to this set of interrogatories to the extent that any interrogatory seeks any trial preparation materials or any information or documents protected by the attorney-client privilege or the work product doctrine. To the extent any interrogatory requests that Defendants' specifically identify which evidence will be offered to establish a particular fact or factual allegation, Defendants object on the grounds that such information is protected by the attorney work product doctrine." In addition, with regard to Local 430's answers to Interrogatory Nos. 1, 2, 4, 5, 6, 8, 9, 10, 11, 12 and 15, it asserts that "Pursuant to Rule 33(d), Defendants direct Plaintiffs to Plaintiffs own business records."

## II. ARGUMENT

Local 430's assertion of the work product doctrine is absolutely contrary to Rule 33 of the Federal Rules of Civil Procedure. Rule 33 specifically **allows contention interrogatories** and the First Circuit Court of Appeals has ruled that accelerating the revelation of facts which will be utilized at trial is not the type of information which is afforded work product privilege. In addition, Local 430's attempt to refer Plaintiffs to Plaintiffs' own business records as Local 430's response to most of its interrogatory answers, purportedly pursuant to Rule 33(d), misconstrues that rule. Finally, most of Local 430's answers do not fully respond to Plaintiffs' interrogatories.

A. Local 430's Assertion Of The Work Product Doctrine Must Be Overruled

Defendants' Response to Plaintiffs' First Set of Interrogatories includes the following general objection which is incorporated into its seventeen answers:

> Defendants object to this set of interrogatories to the extent that any interrogatory seeks any trial preparation materials or any information or documents protected by the attorney-client privilege or the work product doctrine. To the extent any interrogatory requests that Defendants specifically identify which evidence will be offered to establish a particular fact or factual allegation, Defendants object on the grounds that such information is protected by the attorney work product doctrine.

By asserting the work product doctrine, Local 430 is indicating that it is not required to identify the specific facts upon which it bases its allegations (which were taken directly from its Counterclaim and put into interrogatory form by Plaintiffs), because by doing so, it's attorneys' mental impressions will be revealed. For example, Plaintiffs' interrogatories seek the following: No. 1 – "all facts upon which you base your contention that, 'NATCO, NORAD and Miranda constitute a single employer for the purposes of the CBA here at issue'"; No. 2 – "state all facts upon which the allegations contained in paragraph No. 14 are based [the operations of NATCO, NORAD and Miranda were completely integrated]"; No. 3 – "state all facts upon which the allegations contained in paragraph No. 16 are based [Miranda exercised centralized control over all operations of NATCO and NORAD]"; etc. The First Circuit Court of Appeals has dismissed Defendants' very argument and required the disclosure of "opinion" work product where the disclosure merely accelerates that which

will be disclosed later on. The information sought by Plaintiffs will be utilized by Local 430 during the course of trial, therefore, disclosure is required.

In San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007 (1st Cir. 1988), the First Circuit Court of Appeals considered whether the work product doctrine prohibited a magistrate from requiring "parties taking depositions to identify, five days beforehand, the exhibits which they intended to utilize at deposition." Id. at 1009. In San Juan Dupont Plaza Hotel Fire Litigation, "Plaintiffs' representatives complained that such a paradigm, if sanctioned, would require disclosure of attorney work product." Id. The First Circuit Court of Appeals began by ruling that "not every item which may reveal some inkling of lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product. Were the doctrine to sweep so massively, the exception would hungrily swallow-up the rule." Id. at 1015. The Court ruled further that "some materials do not merit heightened protection because, despite the revelations they contain as to an attorney's thought processes, the lawyer has had no justifiable expectation that the mental impressions revealed by the materials will remain private." The First Circuit ruled that the key factor in determining whether "opinion" work product is protected or not is whether the information will probably come to light during the course of trial:

> To a certain extent, discovery responses can be viewed through the same glass. The Civil Rules illustrate this proposition by allowing litigants regularly to gain revelatory information from their opponents in certain circumstances. **For example, Fed.R.Civ. P. 33(b) permits a party to serve interrogatories which require the opposing party, in framing an answer, to render an opinion or spell out a contention that**

> **relates to the application of law to fact**; Fed.R.Civ.P. 36(a) validates requests for admissions that relate to opinions of divers[e] kinds; Fed.R.Civ.P. 26(b)(4) enables a resourceful litigant to obtain important insights into opposing counsel's opinions and legal theories, providing, inter alia, for disclosure of the identity of expert witnesses and production of the "substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Id. **The key factor distinguishing such materials from protected opinion work product is that, even absent compelled disclosure, the information will probably come to light during the course of trial, if not before. The rules do not compel the disclosure of matters which would likely remain inviolate in the bosom of the lodge; they merely accelerate disclosure of matters that would probably be revealed in due course.** As to materials of the latter ilk, the attorney – though he has invested his ratiocinatory capital – has a relatively low expectation of ultimate privacy; indeed, precisely the reverse is often true. When framing, say, a response to a contention interrogatory, the lawyer – far from anticipating that the inferences gleanable from his preparation will remain the darkest of secrets – knows that the inferences will become common knowledge among those connected with the litigation. In real-world terms, the better the lawyer, the more he is likely to seek, whether or not *sotto voce*, to raise and advance his theory of the case through the answer.

Id. Other courts concur.[1] Local 430 must be compelled to respond separately to all seventeen interrogatories contained within Plaintiffs' First Set of

---

[1] See Rusty Jones, Inc. v. Beatrice Co., 1990 WL 139145 *1 (N.D.Ill.) ("Rusty Jones objected to the contention interrogatories, claiming that the answers would require "that Rusty's counsel sort out of all the relevant facts those which they believe are particularly supportive of their case" and that "[t]his sorting out process is work product protected from disclosure." Plaintiff's Memo. in Opposition to Motion to Compel, 9-10. The court finds that defendant **is not asking plaintiff to sort through all relevant information and identify the most relevant facts but instead is asking plaintiff to simply identify all the facts relevant to various allegations in the complaint**. Such interrogatories are expressly permitted by Fed.R.Civ.P. 33(b).); ALTA Health Strategies, Inc. v. Kennedy, 790 F.Supp 1085, 1100 (D.UT 1992) ("Having established the scope of Rule 33 with respect to the mental impressions of attorneys, the court finds that

Interrogatories to Local 430 by identifying all facts sought by Plaintiffs. This disclosure merely accelerates that which will be revealed in due course at trial. The case at bar is indistinguishable from San Juan Dupont Plaza Hotel Fire Litigation, therefore, Local 430 cannot be allowed to assert the work product doctrine as a means to evade its obligations under Rule 33.

B. Contention Interrogatories Are Specifically Allowed

Rule 33(c) specifically provides that "[a]n interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact." Plaintiffs' interrogatories attempt to narrow and clarify the issues which will ultimately be tried in this case by inquiring about the facts underlying allegations set forth in Defendants' Counterclaims. As a result, Local 430's objection should be stricken and it should be compelled to answer Plaintiffs' interrogatories.

Prior to the 1970 amendment of Rule 33 of the Federal Rules of Civil Procedure, courts regularly held that interrogatories could not seek conclusions of law and that parties did not have to apply relevant facts to a legal theory when answering interrogatories. 8A C. Wright & A. Miller, Federal Practice and Procedure § 2167 at 231 (1994). However, conclusions requiring

---

although interrogatories eighteen through twenty seek legal or factual conclusions which constitute mental impressions of Kennedy and O'Donnell's attorneys, they are discoverable under Rule 33,"; Convergent Business Systems, Inc. v. Diamond Reporting, Inc., 1989 WL 92038 *1 (E.D.N.Y) ("Seeking the facts and documents which support a particular allegation in a complaint violates neither the attorney-client or work product privileges as defendants contend."); and Wallace v. General Electric Co. 1988 WL 31069 *2 (E.D.Pa.) ("Interrogatory Nos. 188 through 304 dealing with facts known by the defendant relating to the pertinent paragraphs of plaintiff's complaint must be answered.")

the application of law to fact became proper areas of inquiry after the 1970 amendment of Rule 33 of the Federal Rules of Civil Procedure. Id. at 248. Wright & Miller concludes by stating, "...the only kind of interrogatory that is objectionable without more as a legal conclusion is one that extends to 'legal issues unrelated to the facts of the case." Id. at 249.

In Sargent-Welch Scientific Co. v. Ventron Corp., 59 F.R.D. 500, 503 (N.D.Ill. 1973), the court held that interrogatories propounded by the defendant which sought to inquire into the factual basis of the plaintiff's claim were proper. In Sargent-Welch Scientific Co., the plaintiff objected to interrogatories propounded by the defendant upon the grounds that the answers would require plaintiff's attorneys to reveal legal theories. Id. at 502. Interrogatory No. 16 sought to obtain the factual basis of plaintiff's claim of monopolization and interrogatory No. 18 sought to obtain the factual basis of plaintiff's claim of tying and exclusive dealing. Id. at 503. The plaintiff was ordered to appropriately respond to the interrogatories "by disclosing the requested 'factual opinions'-- the factual basis or source of the allegations contained within the complaint." Id.

In Schaap v. Executive Industries, Inc., 130 F.R.D. 384, 387 (N.D. Ill. 1990), the interrogatories in question inquired about the basis of the defendant's denial of allegations contained in the Complaint. The court ordered the defendant to respond to the plaintiff's interrogatories and stated, "[f]or the litigation to proceed fairly, there must be mutual access to all relevant facts." Id. at 388, citing Sargent-Welch Scientific Co. at 503. The court held

that an interrogatory is not necessarily objectionable "merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact.[2]" Id.

Similar to Schaap and Sargent-Welch Scientific Co., where the courts required the recipient of interrogatories to disclose the factual bases behind general denials and where the recipient was required to disclose facts upon which a claim was founded respectively, Plaintiffs simply seek the disclosure of facts supporting Local 430's Counterclaims. For example, Plaintiffs seek all facts upon which Noral 430 bases its contention that NATCO, NORAD and Miranda constitute a single employer in Request No. 1. How is this mixed question of fact and law any different from Sargent-Welch Scientific Co., where the plaintiff was compelled to respond to interrogatories which sought the factual basis of Plaintiffs' claims of monopolization and tying and exclusive dealing? Plaintiffs are entitled to know the facts upon which Local 430's claims are founded because mutual knowledge of the relevant facts is essential to proper litigation.

---

[2] Other examples where contention interrogatories were held proper include the following: ALTA Health Strategies, Inc. v. Kennedy, 790 F.Supp 1085, 1100 (D.UT 1992), where the court held, "[h]aving established the scope of Rule 33 with respect to the mental impressions of attorneys, the court finds that although interrogatories eighteen through twenty seek legal or factual conclusions which constitute mental impressions of Kennedy and O'Donnell's attorneys, they are discoverable under Rule 33"; B-H Transportation Co., Inc. v. Great Atlantic and Pacific Tea Co., Inc., 44 F.R.D. 436, 438 (N.D.NY 1968), where the court ruled "[p]laintiff having alleged that defendant made false and fraudulent representations which damaged plaintiff, interrogatories properly may call upon the pleader of fraud to set forth at least the degree of particularization required by Rule 9(b)..."; and Union Carbide Corp. v. Travelers Indemnity Co., 61 F.R.D. 411, 413-414 (W.D.PA 1973), where the court held that interrogatories which seek opinion evidence, the legal and factual theories supporting Aetna's assertion of full discharge of its policy liability, were designed to narrow the area of controversy and were not objectionable.

C. It Is Improper For Local 430 To Refer Plaintiffs To Plaintiffs' Own Business Records As Local 430's Response To Plaintiffs' Interrogatories

In Local 430's answers to Interrogatory Nos. 1, 2, 4, 5, 6, 8, 10, 11, 12 and 15, Local 420 responds to Plaintiffs' Interrogatories by directing Plaintiffs to Plaintiffs own business records purportedly pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. However, Rule 33(d) is only applicable where the party responding to an interrogatory produces **its own business records**. Rule 33(d) states as follows:

> **Option to produce business records.**
> Where the answer to an interrogatory may be derived or ascertained from the business records **of the party upon whom the interrogatory has been served** or from an examination, audit or inspection of such business records, including compilation, abstract or summary thereof, and the burden of deriving or ascertaining is substantially the same for the parties serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records. (Emphasis added).

Local 430's attempts to refer Plaintiffs to documents is also improper because the interrogatories seek narrative answers as opposed to the identity of documents. This very point was decided in In re Savitt/Adler Litigation, 176 F.R.D. 44, 48 (N.D.N.Y. 1997), where the Court ruled, "The interrogatories seek facts, not documents or tangible objects, and the **proper form of response is a narrative answer, not a reference to documents** or objects where the answers might be found."

In responding to Plaintiffs' interrogatories, Local 430 has misused Rule 33(d) by advising Plaintiffs to review thousands of pages Plaintiffs own business records in an attempt to evade its obligation to provide a full and complete response to each of Plaintiffs' interrogatories. This puts Plaintiffs in the position of searching for a needle in a haystack.

D. Most Of Local 430's Answers To Plaintiffs' Interrogatories Are Incomplete

Rule 33(b)(1) specifically requires that "[e]ach interrogatory shall be answered separately **and fully**." Fed. R. Civ. P. 34(b)(1). Local 430 has failed to fully respond to many of Plaintiffs' interrogatories. Plaintiffs address Local 430's answers in order:

**Interrogatory No. 2**:

Paragraph No. 14 of Defendants' Counterclaims contains the following allegation:

> The operations of NATCO, NORAD and Miranda were completely integrated. Business expenses, physical plant, customer relationships, equipment leases, and liability for corporate financing were all shared among the various entities.

State all facts upon which the allegations contained in paragraph No. 14 are based, including but not limited to:

a. the date, nature and amount of each shared business expense and the identity of the parties that shared each expense;
b. the date(s) and identities of parties that shared physical plant(s) as well as the address(es) of the shared plant(s);
c. the identity of shared customers, the identity of individuals/companies that shared customers and the time period(s) that the customers were shared;
d. the identity of the parties that were sharing customers, the time period that said customers were shared and whether or not the parties had written contracts with the shared customers;
e. the parties, date(s) and nature of each shared equipment lease; and,

f. the parties, date(s) and nature of each agreement which called for shared liability of corporate financing.

Local 430 has failed to respond to subparagraph a. With regard to subparagraph b, Local 430 has merely provided an address but has failed to provide the dates and identities of the parties that allegedly shared physical plants. With regard to subparagraph c, Local 430 has failed to provide the time periods that the customers were shared. In responding to subparagraph d, Local 430 has failed to set forth the time period that said customers were shared and whether or not the parties had written contracts with the shared customers. With regard to subparagraph e, Local 430 merely indicates that "substantially all of the equipment used by NATCO in its business was leased and nearly all of these leases were co-signed by NORAD and/or Miranda," without specifically identifying the parties, dates and nature of each shared equipment lease as required. Likewise, with regard to subparagraph f, Local 430 fails to identify the parties, dates and nature of each agreement which called for shared liability of corporate financing upon which it is relying.

**Interrogatory No. 5**

Paragraph No. 18 of Defendants' Counterclaims contains the following allegation:

> NATCO was wrongfully rendered insolvent without regard to outstanding obligations to its employees under the CBA and that management and other expenses properly charged to other entities were allocated to NATCO, thereby rendering it insolvent.

State all facts upon which the allegations contained in paragraph No. 18 are based, including but not limited to:

a. the date and amount of each management expense allocated to NATCO but properly charge[able] to other entities including the

identity of the company/person that the expense should have been allocated to and the amount which should have been allocated to that company/person; and

b. the identity, date and amount of every other expense allocated to NATCO but properly charge[able] to other entities including the identify of the company/person that the expense should have been allocated to and the amount which should have been allocated to that company/person.

Local 430 has completely failed to identify the date and amount of each management expense allocated to NATCO but properly charge[able] to other entities including the identity of the company/person that the expense should have been allocated to and the amount which should have been allocated to that company and/or person. In addition, Local 430 has completely failed to identify the date and amount of every other expense allocated to NATCO but properly charge[able] to other entities including the identity of the company/person that the expense should have been allocated to and the amount which should have been allocated to that company/person.

**Interrogatory No. 7**

Paragraph No. 20 of Defendants' Counterclaims contains the following allegation: "NATCO and NORAD have substantially identical business purposes. Both entities prepare, distribute, or transport automobiles." State all facts upon which the allegations contained in paragraph No. 20 are based, including but not limited to the following:

a. the identity of the parties for which NORAD distributed and/or transported automobiles;
b. the dates that NORAD distributed and/or transported automobiles including the point of origin and destination location and the company that received the automobiles; and
c. the identity of the parties for which NATCO prepared automobiles.

Local 430 has failed to identify the parties for which **NORAD** distributed and/or transported automobiles. Local 430 has also failed to identify the dates for which NORAD distributed and/or transported automobiles including the point of origin and destination and the company that received the automobiles. Finally, Local 430 has failed to identify the parties for which NATCO prepared automobiles.

**Interrogatory No. 8**

Paragraph No. 21 of Defendants' Counterclaims contains the following allegation:

> NATCO and NORAD have substantially identical operations. Both entities have the same address and were managed by the same staff from the same offices. Expenses such as payroll, trucking supplies, truck maintenance, diesel fuel, health insurance, dental insurance, shop supplies, classified ads, legal fees, consulting and professional services, telephone bills, freight costs, and office expenses were at all relevant times paid jointly by all employer entities without regard to which nominally separate entity actually incurred the expense.

State all facts upon which the allegations contained in paragraph No. 21 are based, including but not limited to:

a. the dates and locations of business addresses that were shared by NATCO and NORAD;
b. the relevant dates and identity of the individuals and departments that simultaneously managed NATCO and NORAD; and
c. the identity, date and amount of each expense including but not limited to payroll, trucking supplies, truck maintenance, diesel fuel, health insurance, dental insurance, shop supplies, classified ads, legal fees, consulting and professional services, telephone bills, freight costs, and office expenses that were paid jointly by all employer entities without regard to which nominally separate entity actually incurred the expense.

With regard to subparagraph b, Local 430 has failed to identify the relevant dates for which specific individuals and/or departments

simultaneously managed NATCO and NORAD. With regard to subparagraph c, Local 430 has completely failed to identify the date and amount of each shared expense that were jointly paid by all employer entities without regard to which nominally separate entity actually incurred the expense.

**Interrogatory No. 9**

Paragraph No. 22 of Defendants' Counterclaims contains the following allegation:

> NATCO and NORAD share substantially identical equipment. In addition to using the same office space and office equipment, NATCO and NORAD have shared expenses for other equipment. Lease agreements for equipment establish that NATCO and NORAD, among other Miranda-owned entities, jointly entered into lease obligations and shared liability for leased heavy equipment, regardless of which nominally different entity actually used the equipment.

State all facts upon which the allegations contained in paragraph No. 22 are based, including but not limited to:

a. the identity and date(s) of all equipment shared by NATCO and NORAD;
b. the identity, date and amount of each expense that NATCO and NORAD shared for equipment; and
c. the identity of all lease agreements for equipment which were jointly entered into by NATCO and NORAD and/or other Miranda-owned entities including but not limited to the date of each such agreement.

Local 430 has failed to provide the identity and dates of all equipment shared by NATCO and NORAD as required by subparagraph a. In addition, Local 430 has not provided the identity, date and amount of each expense that NATCO and NORAD shared for equipment. Finally, Local 430 has not provided the identify of all lease agreements for equipment which were jointly entered

into by NATCO and NORAD and/or other Miranda-owned entities, including the date of such agreement.

**Interrogatory No. 14**

Paragraph No. 27 of Defendants' Counterclaims contains the following allegation:

> NATCO was at all relevant times insufficiently capitalized for the business purpose it undertook, not least paying the wages of its employees. NATCO operated on capital provided by Miranda or other Miranda-owned entities, or capital provided by loans secured by other entities, including NORAD. NATCO did not pay corporate dividends or observe other corporate formalities.

State all facts upon which the allegations contained in paragraph No. 27 are based, including but not limited to:

a. the identity of all corporate formalities that NATCO did not observe; and
b. the date and amount of all capital that NATCO operated on which was provided by Miranda or other Miranda-owned entities.

With regard to subparagraph b, Local 430 has failed to identify the date and amount of all capital that NATCO operated on which was provided by Miranda or other Miranda-owned entities.

**Interrogatory No. 15**

Paragraph No. 28 of Defendants' Counterclaims contains the following allegation:

> NATCO's funds were siphoned off by Miranda and other Miranda-owned entities through excessive management fees, consulting fees, and other expenses wrongfully charged to NATCO.

State all facts upon which the allegations contained in paragraph No. 28 are based, including but not limited to:

a. the date, amount and payee of all funds that were siphoned off by Miranda and other Miranda-owned entities; and
b. the date, amount and payee of all excessive management fees, consulting fees, and other expenses wrongfully charged to NATCO.

With regard to subparagraph a, Local 430 has failed to identify the date, amount and payee of all funds that were allegedly siphoned off by Miranda and other Miranda-owned entities. With regard to subparagraph b, Local 430 has failed to provide the date, amount and payee of all excessive management fees, consulting fees, and other expenses wrongfully charged to NATCO.

## III. Conclusion

Plaintiffs respectfully request an Order from this Court compelling Local 430 to provide more responsive answers to Plaintiffs' First Set of Interrogatories.

Plaintiffs,

North Atlantic Distribution, Inc. and
Michael Miranda
By their Attorneys

Max Wistow (#0330)

Jeffrey A. Mega (#6441)
Wistow & Barylick Incorporated
61 Weybosset St.
Providence, RI 02903
(401) 831-2700 (Telephone)
(401) 272-9752 (Facsimile)

Thomas J. McAndrew, Esq. (#1001)
One Turks Head Place, Ste. 205
Providence, RI 02903
(401) 455-0350 (Telephone)
(401) 455-0882 (Facsimile)

**CERTIFICATION**

I hereby certify that I hand-delivered a true copy of the within, on the 9th day of May, 2006, to the following:

Christopher H. Little, Esq.
Scott K. Pomeroy, Esq.
Little Medeiros Kinder Bulman & Whitney, PC
72 Pine Street
Providence, RI 02903

F:\Miranda, Mike (NORAD) #6523\PLEADINGS\US DISTRICT CT\Memo of Law in Support of Plaintiffs' MTC Defendants to Provide More Responsive Answers to Ps' First Set of INTS.doc