**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC.<br>AND MICHAEL MIRANDA<br>Plaintiffs | : | |
| v. | : | C.A. NO. 05-0348L |
| TEAMSTERS LOCAL UNION NO. 430,<br>TEAMSTERS LOCAL UNION NO. 776,<br>DANIEL A. VIRTUE in his capacity as<br>President of Teamster Local Union No. 776<br>AND JOHN L. FOGLE in his capacity as<br>Secretary of Teamsters Local Union 776,<br>Defendants | : | |

**SUPPLEMENTAL AFFIDAVIT OF LORRAINE A. HORTON**

I, Lorraine A. Horton, in accordance with the agreement reached between the parties at the Rule 30(b)(6) deposition conducted on August 25, 2006, state as follows:

1. In response to inquiries by counsel pertaining to topic 6(b) of the Rule 30(b)(6) notice, I was asked to provide an itemized list of expenses charged to NATCO that I believe are questionable, but due to an absence of documentation, I cannot opine whether the expenses may or may not be legitimate.

2. I understood that I was asked to provide the documentation by attaching accounting records of NATCO on which I would highlight those items of questionable expenses for which I cannot offer an opinion as to whether they are or are not legitimate.

3. In accordance with the understanding that was reached between the parties, I am attaching to this Affidavit documents itemizing those expenses, which, in my opinion, are questionable, but due to an absence of evidence, I cannot offer an opinion as to whether these are or are not properly chargeable to NATCO.

LORRAINE A. HORTON

STATE OF RHODE ISLAND
COUNTY OF

On this 31 day of August, 2006, before me appeared Lorraine A. Horton and states that she has executed this instrument as her free act and deed.

Notary Public
My Commission Expires:

F:\MIB\Teamsters\No Atlantic v Teamsters 430\Affidavit of Horton 083106.doc

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC. AND MICHAEL MIRANDA,<br>Plaintiffs | : | |
| v. | : | C.A. NO. 05-0348L |
| TEAMSTERS LOCAL UNION NO. 430, TEAMSTERS LOCAL UNION NO. 776, DANIEL A. VIRTUE in his capacity as President of Teamster Local Union No. 776 AND JOHN L. FOGLE in his capacity as Secretary of Teamsters Local Union 776,<br>Defendants | : | |

**SECOND SUPPLEMENTAL AFFIDAVIT OF LORRAINE A. HORTON**

I, Lorraine A. Horton, after having been duly sworn, state as follows:

1. In the Rule 30(b)(6) deposition which was conducted on August 25, 2006, I was asked to identify expenses which I believe have been improperly charged to NATCO, to identify what I believe should have been the proper allocation, and to describe the date and amount of the expense and the party to whom it should have been allocated. I understand that I am to provide documentation for each such expense and include it with this Affidavit.

2. Attached to this Affidavit are accounting documents of NATCO on which I have indicated improper charges. I have included at the end of the accounting documentation my narrative explanation as to the parties to whom the charges should have been properly assessed and, to the extent I am able to offer an opinion, the amounts to be allocated by and among different other parties.

Lorraine A. Horton

LORRAINE A. HORTON

STATE OF RHODE ISLAND
COUNTY OF

On this 31 day of August, 2006, before me appeared Lorraine A. Horton and states that she has executed this instrument as her free act and deed.

Notary Public
My Commission Expires:

F:\MIB\Teamsters\No Atlantic v Teamsters 430\Second Supp Affidavit of Horton 083106.doc

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

NORTH ATLANTIC DISTRIBUTION, INC. :
AND MICHAEL MIRANDA :
Plaintiffs :
:
v. : C.A. NO. 05-0348L
:
TEAMSTERS LOCAL UNION NO. 430, :
TEAMSTERS LOCAL UNION NO. 776, :
DANIEL A. VIRTUE in his capacity as :
President of Teamster Local Union No. 776 :
AND JOHN L. FOGLE in his capacity as :
Secretary of Teamsters Local Union 776, :
Defendants :

**ADDENDUM TO SECOND SUPPLEMENTAL AFFIDAVIT OF LORRAINE A. HORTON**

I have been asked by Plaintiffs to provide:

- The identity, date and amount of expenses for which the Union believes NATCO was improperly charged.
- The identity of the party(ies) to whom the charges should have been made or allocated and the amount that has been incorrectly charged or allocated to NATCO.

The pages of general ledger detail which follow this statement contain the transactions, amounts and dates (with the exception of the portion pertaining to insurance which is discussed separately). The foregoing text responds to the second part of the inquiry identified above.

A. Salaries and Benefits: From 1999 and into 2003, NORAD paid salaries to Michael Miranda and Aldo Caputo and allocated a portion (approximately $1,500/week for Michael Miranda and $200/week for Caputo) of those salaries to NATCO. Although we have

not been given specific information by the Plaintiffs as to the exact dates and amounts of those salary allocations, it appears that the expenses are included in the general ledger Accounts #7190-EXEC and/or #7190-OFFICE, found in the documentation that follows this statement at T00783-00785, T01470-01472, T01940-01942 and T02081-02083. The Miranda or Caputo salaries were not allocated by NORAD to MAP or VSG at any time from 1999 through 2003, although, clearly, that should have been done. From 1999 through 2002, some portion of the NATCO charges for Miranda's and Caputo's salaries should have been allocated to MAP and VSG and that the NATCO allocation should have been less than it was.

In addition, and perhaps, involving greater amounts, NATCO ceased substantially all operations at the end of 2001 and concluded its nominal operations during the first few months of 2002. Therefore, all of Miranda's and Caputo's salaries should be charged to NORAD after the date that all operations substantially ceased. Moreover, the extraordinary costs booked in Accounts #7190-EXEC and #7190-OFFICE after operations substantially ceased should have been booked to NORAD. These amounts appear to be in the net total amount of approximately $45,000.

Included in certain documents, with my first supplemental affidavit are pages T00736, T01391, T01392, T01393, T01859, T01860, T01861 and T02064. These portions of the general ledger include references to life insurance payments for Michael Miranda charged to NATCO.

From 1999 through 2002, NATCO paid a quarterly invoice in the amount of $428.18 described as life insurance for Miranda. This employee benefit should have been paid by NORAD or by Miranda personally. The payments appear to total at least $1,712.72,

$1,712.72, $856.36 and $428.18 for the years 1999, 2000, 2001 and 2002, respectively. These charges should not have been assessed to NATCO.

B. Management Fees: The accounting records of MAP indicates that it paid management fees to NORAD of $500,000 in 1999, $665,000 in 2000, and $350,000 in 2001. From the testimony of Aldo Caputo and Michael Miranda, it is apparent that MAP's principal interface with all of the other companies was with NATCO in the York facility. We also received testimony from Caputo that NATCO was engaged as a "subcontractor" to MAP for trucking services and MAP only paid NATCO between 70%-90% of what MAP received from other parties for such services. The Union asserts that, to the extent that MAP did not pass through the revenue it received from its customers for the cost of trucking and, instead, paid its excess revenues to NORAD as "management fees," that, for all practical purposes, NATCO paid those funds within the management fees paid to NORAD by MAP.

C. David Friedman: From 1999 to 2003, NATCO was charged a portion of $30,000 attributable to the stock redemption payments to be made to David Friedman to purchase his shares of NATCO stock. This should not have been booked as a cost of operations and, instead, should have been funded through an infusion of capital by Michael Miranda, who benefited personally by this transaction. These payments total $20,714.70 from 1999 through 2003, a year after operations ceased, and are documented in NATCO's general ledger detail in Account #2490. The balance of $9,285.30 was improperly booked as a NATCO payable as of the end of 2003.

As part of Miranda's buyout of David Friedman's stock, a consulting agreement was also entered into whereby NORAD was to pay Friedman $99,000 per year for six (6) years. Although the consulting agreement was with NORAD alone, NATCO paid 75% of the

consulting fees or $75,000 per year to Friedman from February 1999 through January 2003. Assuming Mr. Friedman actually provided consulting services (which we doubt occurred), this expense should have been proportionately assessed against all four companies, which would result in NATCO being assessed approximately one-third (1/3) of the consulting fee. That amount should have stopped in its entirety after NATCO ceased operations in January 2002. Instead of having been booked with charges of $300,000, and, assuming Mr. Friedman provided consulting services, the maximum amount that should have been attributable to NATCO should have been approximately $100,000. The amounts paid to Mr. Friedman are documented in NATCO's general ledger detail Account #6035.

Miranda's agreement to buy out Friedman's NATCO stock also entailed interest on the $30,000 note payable. This interest should have been paid by Mr. Miranda personally. The amounts are $1,548.33, $1,450.17, $1,188.74, $931.59 and $674.44 in 1999 through 2003, respectively, and are documented in the pages T00802-00803, T01505-01507, T01966-01967, T02087-02089 and T03111-03112.

D. <u>Truck Leases and Other Expenses</u>: NATCO closed its York facility in October 2001 and ceased substantially all operations by mid-February 2002. All of NATCO's trucks were co-leased by both NATCO and NORAD, and NORAD continued to hold and store some of those trucks through at least May 2005. NATCO had no reason to hold the trucks after February 2002 and received no benefit from NORAD's continuing to make the lease payments. NATCO has been improperly charged for the post-February 2002 lease payments which were made by NORAD. Those payments total $194,465.63 and are documented in the pages T02071-02073.

F:\MIB\Teamsters\No Atlantic v Teamsters 430\Addendum to Horton Affidavit 090106.doc